## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| Pacific Union Financial, LLC, | ) | Case No. 18-cv-00273-JNE/FLN |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **MEMORANDUM OF LAW** |
| | ) | **IN SUPPORT OF** |
| David C. Dingman, Scott C. Smith, | ) | **DEFENDANT CARDINAL** |
| Nicholas W. Brownell, and Cardinal | ) | **FINANCIAL COMPANY'S** |
| Financial Company, John Does 1 | ) | **MOTION TO DISMISS** |
| through 10, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

_____

## I. <u>INTRODUCTION</u>

Plaintiff Pacific Union Financial, LLC ("Pacific Union") first filed this lawsuit on

January 5th in Hennepin County District Court.  In its initial Complaint, Pacific Union

only named David Dingman, Scott Smith, and Nicholas Brownell as defendants (the

"Individual Defendants").  After Pacific Union's Motion for Temporary Restraining

Order failed to obtain any meaningful relief, Pacific Union voluntary dismissed the case

three weeks later.[1]

_____

[1] *See Pacific Union Financial, LLC v. David C. Dingman, Scott C. Smith, Nicholas W. Brownell*, Hennepin County Case No. 27-CV-18-329 (filed by Pacific Union on January 5, 2018, voluntarily dismissal filed by Pacific Union on January 26, 2018).  For the Court's convenience, a copy of Pacific Union's Hennepin County Complaint is attached as Exhibit 1 to the Declaration of Samuel W. Diehl (this state Complaint cited, hereinafter, as "Henn. Compl." and referenced in text as the "Hennepin County Complaint," Pacific Union's Complaint in this federal action will be cited, hereinafter as "Fed. Compl." and referred to in text as the "Complaint").

Pacific Union has now re-filed its claims, adding the Individual Defendants' new employer, Defendant Cardinal Financial Company ("Cardinal") as a party. Whatever its purpose in adding Cardinal as a party, it is clear that Pacific Union had no factual basis to do so. Pacific Union's federal Complaint repeats conclusory allegations regarding Cardinal that were first asserted in Pacific Union's original Hennepin County Complaint. (*Compare, e.g.*, Henn. Compl. ¶¶95, 168 with Fed. Compl. ¶¶110, 213.) However repetitive, the new Federal Complaint still alleges no actionable wrongdoing by Cardinal.

Pacific Union's claims against Cardinal cannot survive on the mere recitation of their elements, particularly when its recitation is incomplete. Pacific Union's Complaint fails to plead factual content on all required elements that could allow this Court to draw the reasonable inference that Cardinal may actually be liable for the wrongful acts alleged. As such, Pacific Union's claims against Cardinal must be dismissed. Because Pacific Union has effectively re-pled its claims once already, and its second Complaint's deficiencies cannot be cured by re-pleading, the Court's dismissal should be with prejudice.

## II. <u>FACTUAL ALLEGATIONS</u>

There are a few facts on which all parties likely agree, including that the Individual Defendants worked for Pacific Union until late 2017 and that Cardinal and Pacific Union are competitors in certain areas of the United States with respect to certain segments of the mortgage industry. It is also undisputed that Cardinal offered employment to the Individual Defendants and certain other Pacific Union employees in December 2017, and the Individual Defendants and certain other Pacific Union

employees accepted employment with and are now employees of Cardinal. While Cardinal denies any wrongdoing and reserves the right to dispute all allegations in the Complaint, it accepts the Complaint's properly pled factual allegations as true for the purpose of this Motion.

## A.     Allegations Regarding the Individual Defendants

The Complaint focuses primarily on the alleged acts or omissions of the Individual Defendants while they were employed by Pacific Union.  Tellingly, however, the Complaint fails to allege that Cardinal authorized or even had knowledge of the Individual Defendants' alleged conduct.

For example, there are a number of allegations regarding the Individual Defendants' employment with Pacific Union, including that they executed specific agreements, Complaint Exhibits 3-5, with Pacific Union at the inception their employment. (Fed. Compl. ¶¶80-82, Exs. 3-4.)  However, the Complaint does not allege that Cardinal had knowledge of Exhibits 3-5 or their provisions or other activities allegedly undertaken by the Individual Defendants during their employment.  Similarly, there are allegations that during their employment with Pacific Union, the Individual Defendants took actions to diminish Pacific Union's sales or refer its customers to Cardinal. (*Id.* ¶¶30, 38-39, 43, 49-50, 96-97.) Yet the Complaint does not include any allegation that Cardinal authorized, endorsed or even had any knowledge of such actions or efforts.

The Complaint also alleges that one or more of the Individual Defendants deleted email messages or obtained Pacific Union documents or information by download or

delivery to a personal email account. (*Id.* ¶¶31, 44, 51 54, 58.)  Once more, the Complaint does not include any allegation that Cardinal had knowledge of, requested, or otherwise authorized such action, nor does it allege that Cardinal actually now has any document or data specifically referenced in the Complaint.

There are also allegations regarding the Individual Defendants' recruitment of Pacific Union employees to join Cardinal. (*Id.* ¶¶86, 88-89, 92-93, 100-01.)  While it is, of course, fair to assume that Cardinal had knowledge of the job offers it made, there is no allegation that Cardinal had any improper or unlawful motive or purpose in its recruitment of Pacific Union employees or that Cardinal had knowledge that any action of the Individual Defendants in such recruitment was wrongful.  Nowhere in Pacific Union's lengthy recitation of alleged wrongdoing by the Individual Defendants does the Complaint allege any wrongdoing by, known to, or authorized by Cardinal.

**B.      Factual Allegations Regarding Cardinal's Knowledge, Acts or Omissions**

The Complaint includes minimal factual allegations related to any acts or omissions of Cardinal.  Its factual allegations related to Cardinal consist of the following allegations entirely consistent with a lawful hiring process:

- On information and belief, Individual Defendants had discussions with Cardinal executive Brian Mitchell beginning in April 2017, or earlier, about moving Pacific Union's branches to Cardinal. (*Id*. ¶29.)

- On information and belief, on approximately December 11, 2017, Cardinal sent offers of employment to certain Pacific Union employees.  (*Id.* ¶40.)

- Cardinal hosted a web-based training session that was attended by Pacific Union employees before they resigned from Pacific Union. (*Id.* ¶ 55.)

- In December 2017, a Cardinal employee sent an email to Pacific Union asking permission for Cardinal to "assume" the leases at Pacific Union branch locations where some of the Pacific Union employees had submitted resignations. (*Id.* ¶66.)

- On or before January 4, 2018 (six days after Pacific Union alleges its former employees had resigned), Cardinal allegedly obtained credit reports for individuals who previously had loan applications, pre-qualifications, or loans in process with Pacific Union. (*Id.* ¶¶70, 73.)

- After the Individual Defendants left employment with Pacific Union, Pacific Union found "printed copies" of email messages between Individual Defendants and a Cardinal manager, "outlining their business plans [not described or characterized in the Complaint] weeks in advance." (*Id.* ¶63.)[2]

- Defendants[3] have sought to ensure that Pacific Union customers with loan applications in process at Pacific Union transferred their applications to Cardinal. (*Id.* ¶98.)

---

[2] It is noteworthy that this allegation references a "printed cop[y]" of the email messages outlining the ominously labeled "business plans weeks in advance" made with the Cardinal manager. However, the Complaint fails to attach, quote, or even characterize these written plans.

[3] The allegation in paragraph 98 does not allege when such act occurred. In addition, this allegation, and others in the Complaint, is unclear whether it references all Defendants or

While this is the sum of the facts alleged regarding Cardinal in the Complaint's "factual background," the Complaint's claims also include several sweeping legal conclusions alleging Cardinal's universal knowledge, planning, and participation. However, Pacific Union does not attempt to allege any specific facts regarding the particular claims at issue.

## III.  PACIFIC UNION'S CLAIMS AGAINST CARDINAL

Pacific Union's federal Complaint appears to assert the following claims against Cardinal:

- Count One – Violation of Minnesota Uniform Trade Secrets Act ("MUTSA");

- Count Two – Violation of the federal Defend Trade Secrets Act ("FDTSA");

- Count Four – Breach of Duty of Loyalty;[4]

- Count Six – Breach of Contract;

- Count Seven – Tortious Interference With Existing Contracts;

- Count Eight – Tortious Interference With Prospective Contractual and  Business Relations; and

- Count Ten – Civil Conspiracy.

## IV. STANDARD OF REVIEW

only the Individual Defendants.  Where an allegation could plausibly be read to include Cardinal, Cardinal has assumed for this Motion that it refers to Cardinal.

[4] The Complaint does not clearly identify which claims are asserted against all Defendants and those which allege wrongdoing exclusively against some or all of the Individual Defendants.

When considering a motion to dismiss under Rule 12(b)(6), the pleadings are construed in the light most favorable to the non-moving party, and the facts alleged in the Complaint must be taken as true. *Ashley County, Ark. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009). In addition, a court must afford the plaintiff all reasonable inferences from those allegations. *Blankenship v. USA Truck, Inc.*, 601 F.3d 852, 853 (8th Cir. 2010). At the same time, to withstand a motion to dismiss under Rule 12(b)(6), a plaintiff must properly plead its claims under Rule 8 and meet the principles articulated by the United States Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). Under these principles, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 677 (quoting *Twombly*, 550 U.S. at 556). "[T]he plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully." *Ritchie v. St. Louis Jewish Light*, 630 F.3d 713, 717 (8th Cir. 2011) (internal quotation and citation omitted). Accordingly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not survive a motion to dismiss. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555); *Springdale Educ. Ass'n v. Springdale Sch. Dist.*, 133 F.3d 649, 651 (8th Cir. 1998) ("a complaint must contain facts sufficient to state a claim as a matter of law and must not be merely conclusory in its

allegations"). And "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but is has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). This requires a plaintiff to plead each required element of each claim. *See, e.g.*, *Brown v. Simmons*, 478 F.3d 922, 923 (8th Cir. 2007) *Am. Institute of Physics v. Schwegman Lundberg & Woessner, P.A.*, No. 12-528 (RHK/JJK), 2012 WL 3799647, at *2 n.1 (D. Minn. July 2, 2012) ("[A] plaintiff, at the pleading stage, must allege facts supporting each element of a claim"). Under this standard, the Court must dismiss all of Pacific Union's claims against Cardinal.

## V. <u>ARGUMENT</u>

### A. All of Pacific Union's Claims Fail Because the Complaint Does Not Plead Facts Sufficient to Demonstrate Cardinal's Vicarious Liability

Pacific Union has not pled facts sufficient for Cardinal to be held liable for the alleged actions of the Individual Defendants. All of Pacific Union's claims allege wrongful acts by the Individual Defendants for which Pacific Union seeks to hold Cardinal liable. However, Pacific Union has not pled facts on which this Court could plausibly find Cardinal liable for the alleged actions of the Individual Defendants.

Under the doctrine of respondeat superior, Cardinal could only be found liable for the acts of the Individual Defendants if the Individual Defendants were agents of Cardinal under common law agency principles and that the alleged "act causing injury was within the scope of the [Individual Defendants'] agency." *Semrad v. Edina Realty, Inc.*, 493 N.W.2d 528, 535 (Minn. 1992). Pacific Union may not be found liable for the

unauthorized acts of its agents. *Id.*; *see also Remodeling Dimensions, Inc. v. Integrity Mut. Ins. Co.*, 819 N.W.2d 602, 615 (Minn. 2012).[5]

For purposes of this motion, Cardinal assumes arguendo that the Complaint sufficiently alleges that the Individual Defendants could be found to be agents of Cardinal for certain purposes. However, the Complaint does not attempt to allege that the Individual Defendants were authorized by Cardinal to undertake any alleged unlawful act. The Complaint's only assertion that Cardinal authorized the Individual Defendants to engage in any wrongful act is a generic, conclusory assertion repeated throughout the Complaint alleging "on information and belief" that all of the actions and knowledge of the Individual Defendants must be automatically imputed to Cardinal.

Throughout its claims, Pacific Union repeats the following paragraph:

> On information and belief, Cardinal conspired with, aided, assisted and encouraged the unlawful actions of Dingman, Smith, Brownell and other Pacific Union personnel.

(Fed. Compl. ¶¶ 112, 151, 163, 187, 195.) This generic conclusion, even if it were plausible, does not allege that Cardinal authorized any particular act. Instead, Cardinal is charged with omniscience with respect to any act alleged of the Individual Defendants.

This allegation must be disregarded because it is facially impossible. As a practical matter Cardinal could not have "conspired with, aided, assisted and encouraged"

---

[5] With respect to Count Two, Cardinal has not identified a case outlining the vicarious liability standard under the Federal Defend Trade Secrets Act. However, federal courts employ federal common law "principles" to determine a defendant's vicarious liability for the acts of its agents under federal statutes similar to Minnesota's common law standard. *See, e.g.*, *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 754-55 (1998); *Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 740–41 (1989).

every single act alleged of the Individual Defendants. Cardinal could not have knowledge of every alleged conversation, action, or omission that is alleged regardless of when or where it occurred, or who was involved. This extraordinarily broad allegation, asserted by Pacific only "on information and belief," "is the sort of implausible statement that *Twombly* and *Iqbal* prohibit." *Lara v. Fed. Nat. Mortg. Ass'n*, No. CIV. 13-676 SRN/AJB, 2013 WL 3088728, at *3 (D. Minn. June 18, 2013).

To impose liability on Cardinal for any acts of the Individual Defendants, Pacific Union was required to plead plausible allegations: (a) outlining the alleged scope of the Individual Defendants' pre-employment agency; and (b) alleging that specific acts within that scope caused Pacific Union's alleged injuries. Pacific Union has not met its burden. As such, Pacific Union's Claims, all premised on vicarious liability and respondeat superior, must be dismissed.

**B.      Pacific Union's Count One Must be Dismissed as to Cardinal Because the Complaint does not Allege Actual Wrongful Actions by Cardinal.**

The Complaint's Count One does not allege any specific wrongful conduct by Cardinal, let alone the required elements of a claim for trade secret misappropriation. Count One's generic allegations do not allege the category or type of trade secret Cardinal allegedly acquired, or even whether Cardinal has any awareness of how or what it had acquired. Pacific Union's generic allegations in Count One cannot withstand *Twombly/Iqbal* scrutiny and must be dismissed.

As relevant to Pacific Union's claims and this motion, to be liable for trade secret misappropriation under the MUTSA, Cardinal must have: (a) "acqui[red] a trade secret

of" Pacific Union; and (b) Cardinal must "know[] or ha[ve] reason to know that the trade secret was acquired by improper means. . . [which] include theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means." Minn. Stat. § 325C.01, subds. 2, 5.[6]

Pacific Union's Count One references Cardinal only in the following paragraphs:[7]

> 105. Pacific Union's trade secrets are of value to Pacific Union's competitors, such as Cardinal, and the individual Defendants have actively transferred such information to Cardinal for the use and benefit of all Defendants.
> ***
> 110. Defendants misappropriated Pacific Union's trade secrets by acquiring them through unlawful means and disclosing and using them for the benefit of Pacific Union's competitor, Cardinal, and contrary to Pacific Union's interests, all in violation of the Minnesota Uniform Trade Secrets Act.

Despite alleging that the Individual Defendants took specific email messages, files, lists and documents earlier in the Complaint, Pacific Union fails to allege that any specific documents, communications, or data or even categories of data was "transferred" to Cardinal or how or when the same was transferred. Such generic allegations are insufficient to state a claim for trade secret misappropriation. *See, e.g.*, *Schlief v. Nu-Source, Inc.*, No. 10-4477(DWF/SER), 2011 WL 1560672, at *7 (D. Minn. Apr. 25,

---

[6] To the extent it alleges any wrongful act on the part of Cardinal, the Complaint only appears to allege that Cardinal wrongfully acquired Pacific Union's trade secrets as prohibited by Minn. Stat. § 325C.01, subd. 5(i). The Complaint does not allege that Cardinal "disclos[ed] or use[d]" Pacific Union's trade secrets as prohibited by Minn. Stat. § 325C.01, subd. 5(ii).

[7] This claim also includes Pacific Union's generic and impossible allegation seeking to automatically attribute all of the Individual Defendants' alleged conduct to Cardinal. (Fed. Compl. ¶112.)

2011) (dismissing claim because plaintiff pled merely that counterclaim defendant "gained access to Defendants' trade secrets and other confidential, competitive and proprietary information belonging to Defendant, including but not limited to, Defendant's customer and price lists.").  As Judge Schiltz summarized in *Medafor, Inc. v. Starch Med. Inc.*, to properly plead a trade secret claim, a plaintiff:

> must (1) identify the trade secrets. . . specifically enough to enable [the defendant] to understand what it has been accused of stealing; (2) plead facts to support [the plaintiff]'s allegation that the trade secrets were stolen by [defendant].. . .

No. 09-CV-0441 PJS/FLN, 2009 WL 2163580, at *1-2 (D. Minn. July 16, 2009).  Pacific Union's claim against Cardinal does not meet this standard.

The Claim must also be dismissed because it fails to include any allegations that Cardinal took any action to acquire any Pacific Union trade secret, that Cardinal had knowledge of any specific action of the Individual Defendants to allegedly transfer any trade secret, or that Cardinal knew that such secrets were acquired by improper means. To survive this Motion, Pacific Union was required to plausibly plead these allegations. *See* Minn. Stat. § 325C.01, subds. 2, 5; *Excel Mfg., Inc. v. Wondrow*, No. A15-1325, 2016 WL 1551674, at *4 (Minn. Ct. App. Apr. 18, 2016) (dismissing a trade secret claim when plaintiff failed to demonstrate specific elements of the claim); *Mach 1 Air Services, Inc. v. Garcia*, No. CV-08-0911-PHX-FJM, 2008 WL 3200777, at *3 (D. Ariz. Aug. 6, 2008) (dismissing trade secret claim where complaint did not allege the type of information defendant used or how the defendant used it); *Knights Armament Co. v. Optical Sys. Tech., Inc.*, 568 F. Supp. 2d 1369, 1377 (M.D. Fla. 2008) (same); *Meritage*

*Homes Corp. v. Hancock*, 522 F. Supp. 2d 1203, 1220 (D. Ariz. 2007) (finding without specific instances of use or disclosure of trade secrets, conclusory statements regarding inevitable misappropriation of trade secrets were insufficient to state a claim). Because Pacific Union has not pled required elements of its MUTSA claim against Cardinal, the claim must be dismissed.

**C.     Pacific Union's Count Two Must be Dismissed Because the Complaint Does Not Attempt to Allege Essential Elements of the Claim.**

Pacific Union's Count Two is similarly deficient. Pacific Union fails to allege any specific wrongdoing by Cardinal and does not allege essential elements of a federal trade secret claim. As such, the Complaint's Count Two must be dismissed.

To state a claim under the FDTSA, Pacific Union must allege sufficient facts to allow the Court to plausibly find that Cardinal:

> [had an] intent to convert a trade secret, that is related to a product or service used in or intended for use in interstate or foreign commerce, to the economic benefit of anyone other than the owner thereof, and intending or knowing that the offense will, injure any owner of that trade secret, knowingly—[engaged in certain enumerated wrongful acts, including] (3) receives, buys, or possesses such information, knowing the same to have been stolen or appropriated, obtained, or converted without authorization; . . . or (5) conspires with one or more other persons to commit any offense described in paragraphs (1) through (3), and one or more of such persons do any act to effect the object of the conspiracy.

18 U.S.C.A. § 1832(a).

The Complaint's only allegations regarding Cardinal under Count Two are that:

> 123.    Pacific Union's trade secrets are of value to Cardinal, as Pacific Union's competitor. The value of these trade secrets is demonstrated by the fact that Cardinal has offered Dingman and Smith guaranteed annual

compensation well in excess of their prior earning at Pacific Union, with total compensation packages that are well above the $1 million level per individual.[8]

***

127.  Cardinal was aware of the nature of Pacific Union's trade secrets.

128.  As further set forth above, the Defendants misappropriated Pacific Union's trade secrets by acquiring them through unlawful means, disclosing and using them on behalf of Cardinal, and continuing to retain possession of Pacific Union's trade secrets, in violation of the Defend Trade Secrets Act, 18 U.S.C. § 1836, *et seq*.

129.  Defendants continue to use Pacific Union's trade secrets by contacting and doing business with the customers and prospective customers identified on the confidential information and documents of Pacific Union taken by the individual Defendants in preparation for working with Cardinal.

(Complaint ¶¶127-29.)[9]  Like its Count One, Pacific Union has failed to allege wrongful acts by Cardinal apart from the alleged acts of the Individual Defendants.  Moreover, there is no allegation whatsoever in the Complaint that Cardinal: (1) had an "intent to convert a trade secret;" (2) "intend[ed] or kn[ew] that the offense [would], injure" Pacific Union; or (3) "knowingly. . . receive[d] [trade secrets] knowing the same to have been stolen or appropriated, obtained, or converted without authorization" or any other of the enumerated wrongful acts necessary to state an FDTSA claim. 18 U.S.C.A. § 1832(a). Each of these omissions is fatal to Pacific Union's FDTSA claim. *See, e.g*., *Search Partners, Inc. v. MyAlerts, Inc.*, No. 17-1034 (DSD/TNL), 2017 WL 2838126, at *1-2

---

[8] Perplexingly, the Complaint fails to explain how Dingman and Smith's compensation was tied to or otherwise correlates with any alleged procurement of Pacific Union's alleged trade secrets.

[9] Count Two once more repeats Pacific Union's allegation of omniscience with respect to every wrongful act of the Individual Defendants, at all times. (Fed. Compl. ¶151.)

(D. Minn. June 30, 2017) (dismissing claim because the plaintiff's complaint had "not alleged 'misappropriation' within the meaning of the act."); *Agilysys, Inc. v. Hall*, 258 F. Supp. 3d 1331, 1347-49 (N.D. Ga. 2017) (dismissing an FDTSA claim because the assertion that the defendant knew that the information was protected under a non-disclosure agreement was supported only by "conclusory allegations").  As such, this claim must be dismissed.

**D.  To the Extent they Even Allege a Claim Against Cardinal, Pacific Union's Counts Four and Six Must be Dismissed Because Cardinal had No Contract with or Duty of Loyalty to Pacific Union.**

Pacific Union's Counts Four and Six could be read to attempt to assert breach of contract and breach of duty of loyalty claims against Cardinal.  (*See* Fed. Compl. ¶¶151-53; 174-76.)  While this is likely an erroneous implication due to imprecise language, Cardinal seeks clarity that these claims cannot be asserted against Cardinal because Cardinal had no contract with and no duty of loyalty to Pacific Union.  To the extent they are asserted against Cardinal, these claims should be dismissed.

**E.  Pacific Union's Count Seven Must be Dismissed as to Cardinal Because the Complaint does not Allege Essential Elements of the Claim.**

Pacific Union has not alleged any specific wrongdoing by Cardinal in its tortious interference with contract claim, Count Seven.  Pacific Union has not alleged that Cardinal had knowledge of any specific contract, let alone the non-solicitation agreements executed by the Individual Defendants.  Nor does Pacific Union allege that Cardinal intended for the Individual Defendants to breach such contracts.  As a result, Pacific Union's Count Seven against Cardinal must be dismissed.

Under Minnesota law, the elements of a claim for tortious interference with contract are: (1) the existence of a contract, (2) the defendant's knowledge of the contract, (3) the defendant's intentional procurement of the breach of contract, (4) the defendant acted without justification, and (5) damages. *See Midwest Spots Marketing, Inc. v. Hillerich & Bradsby of Canada, Ltd.*, 552 N.W.2d 254 (Minn. Ct. App. 1996); *see also Schlief*, 2011 WL 1560672, at *8 (citing *Maness v. Star-Kist Foods, Inc.*, 7 F.3d 704, 709 (8th Cir. 1993)). Pacific Union's allegations in Count Seven regarding Cardinal consist of the following paragraphs:[10]

> 180. Each Defendant knew of Pacific Union's existing contractual relationships with its mortgage loans customers and its employees.

> 181. Defendants intentionally and tortiously, without justification or excuse, interfered with Pacific Union's contractual relationships, for their own gain, and to the detriment of Pacific Union by (1) encouraging Pacific Union's employees to terminate their employment; (2) encouraging Pacific Union's employees to misappropriate and misuse Pacific Union property and confidential information; and (3) inducing customers having an existing loan application in process with Pacific Union to transfer their loan applications to Cardinal.

Similar to its assertion regarding Cardinal's comprehensive knowledge of every act of the Individual Defendants, through Paragraph 180 Pacific Union seeks to circumvent its obligation to allege knowledge of any specific contract at issue in Count Seven. Pacific Union simply asserts that Cardinal has knowledge of *every* contractual relationship Pacific Union has with each of its mortgage loans customers and employees. This allegation is, of course, impossible. A complaint fails to state a clam if it does not

---

[10] Pacific Once more repeats its mantra that Cardinal "conspired with, aided, assisted and encouraged the unlawful actions of" the Individual Defendants. (Fed. Compl. ¶187.)

allege facts showing that the defendant was aware of the specific contract at issue. *See, e.g.*, *Matson Logistics, LLC v. Smiens*, No. 12-400 ADM/JJK, 2012 WL 2005607, at *12 (D. Minn. June 5, 2012) ("However, Matson failed to include the requisite facts to show that Trinity had knowledge of facts which would have led to its disclosure of Matson's contract with Smiens/Global.. . . Accordingly, Matson has failed to plead facts sufficient to support its claim of tortious interference with contractual relations by Trinity."); *see also Architects Collective v. Gardner Tanenbaum Grp.*, No. CIV-08-1354-D, 2010 WL 2721401, at *4 (W.D. Okla. July 6, 2010) (granting motion to dismiss because "Plaintiff has failed to plead *facts* showing that [defendant] knew its conduct would interfere with Gardner's contractual obligations. . . . Further, Plaintiff does not allege that [defendant] knew the" obligations imposed by the contract).

Paragraph 181 of the Complaint is simply a recitation of the elements of this cause of action. Such "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" cannot withstand a motion to dismiss. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555); *Springdale Educ. Ass'n*, 133 F.3d at 651. A complaint also fails to state a claim if it fails to allege plausible facts demonstrating that the defendant intentionally caused a breach of the contract. *See E-Shops Corp. v. U.S. Bank Nat'l Assoc.*, 678 F.3d 659, 664-65 (8th Cir. 2012) ("Applying the rule laid out by the Minnesota Supreme Court, E-Shop's claim fails as a matter of law because it does not allege U.S. Bank intentionally procured a breach of E-Shops's contract with HSBC bank."); *Matson Logistics*, 2012 WL 2005607, at *11-12 ("It is, of course, essential that some acts of the defendants were the proximate cause of the breach. It is not enough that

the defendants merely knew of the contractual relationship and obtained its benefits for themselves."); *Benfield Inc. v. Aon Re, Inc.*, No. 07-2218 ADM/FLN, 2008 WL 80610, at *3 (D. Minn. Jan. 8, 2008) ("Benfield needed to proffer facts demonstrating that Aon intentionally procured the breach of a contract.").

In fact, Pacific Union does not allege that Cardinal caused any breach of a contract, let alone that Cardinal intended to do so. Pacific Union alleges that Cardinal encouraged Pacific Union's employees to terminate their employment and induced customers having an existing loan application in process with Pacific Union to transfer their loan applications to Cardinal. Yet Pacific fails to explain how these actions could be a breach of contract. Merely offering a job to the employee of another or offering a competitor's customer an alternative bargain, is not tortious interference and instead is favored under Minnesota law. *See, e.g.*, *Matson Logistics, LLC v. Smiens*, No. 12-400 ADM/JJK, 2012 WL 2005607, at *10 (D. Minn. June 5, 2012) (citing *Salon 2000, Inc. v. Dauwalter*, No. A06-1227, 2007 WL 1599223, at *5 (Minn. Ct. App. June 5, 2007)); *United Wild Rice, Inc. v. Nelson*, 313 N.W.2d 628, 632–33 (Minn.1982) ("Competition is favored in the law."); *Hough Transit, Ltd. v. Nat'l Farmers Org.*, 472 N.W.2d 358, 361 (Minn. Ct. App.1991). And while breach of a confidentiality provision could be the requisite breach of contract, the Complaint fails to include required allegations that Cardinal had knowledge of any such provision or that Cardinal intentionally sought any contractually protected information from any Pacific Union employee so bound.

There is no allegation in the Complaint that Cardinal had knowledge of any of the contracts at issue in the Complaint or that Cardinal intentionally and improperly procured

their breach.  Because it fails to plausibly allege these required elements, Count Seven

against Cardinal must be dismissed.

**F.     Pacific Union's Count Eight Must be Dismissed as to Cardinal Because the Complaint does not Allege Wrongdoing by Cardinal and Essential Elements of the Claim.**

Like its Count Seven, Pacific Union has not alleged any specific wrongdoing by

Cardinal through its tortious interference with prospective contractual and business

relations.  Pacific Union has not alleged that Cardinal had knowledge of any prospective

contractual relationships or business relations.  Pacific Union also again fails to allege

that Cardinal intended to interfere with such relationships or relations.  Pacific Union's

Count Eight against Cardinal must be dismissed.

The elements of a claim for tortious interference with business expectancy are:

(1) the existence of a reasonable expectation of economic advantage or benefit belonging

to plaintiff; (2) that the defendant had knowledge of that expectation of economic

advantage; (3) that the defendant wrongfully and without justification interfered with

plaintiff's reasonable expectation of economic advantage or benefit; (4) that in the

absence of the wrongful act of defendants, it is reasonably probable that plaintiff would

have realized its economic advantage or benefit; and (5) that plaintiff sustained damages

as a result of this activity.  *Lamminen v. City of Cloquet*, 987 F. Supp. 723, 731

(D.Minn.1997) (citing *United Wild Rice*, 313 N.W.2d at 632-33).

Pacific Union's only allegation regarding Cardinal is the repeated catch-all that:

194.    Defendants have acted intentionally, willfully, maliciously, and with reckless disregard of the rights of Pacific Union.

195.   On information and belief, Cardinal conspired with, aided, assisted and encouraged the unlawful actions of Dingman, Smith, Brownell and other Pacific Union personnel.

These generic allegations do not allege that Cardinal had knowledge of the existence of a reasonable expectation of economic advantage or benefit belonging to Pacific Union.  The allegation also fails to allege that Cardinal wrongfully and without justification interfered with Pacific Union's s reasonable expectation of economic advantage or benefit.  As a result, Pacific Union's Count Eight must be dismissed against Cardinal. *See, e.g.*, *Matson Logistics*, 2012 WL 2005607, at *13 ("Similarly, Matson's claim for tortious interference with prospective advantage against Trinity fails for the aforementioned reasons set forth. . .; namely, that Matson has alleged no facts showing improper means or intentional procurement with a purported economic advantage in its tortious interference with prospective advantage claim."); *Benfield Inc.*, 2008 WL 80610, at *3 ("Benfield has pled no facts relating to any actions Aon may have taken to procure St. Paul's decision to change brokers and thus there is no basis to determine whether it is plausible that Aon's actions were wrongful and without justification."); *U.S. Foodservice, Inc. v. Rezac*, No. 04-4548 (JNE/JGL), 2005 WL 1661529, at *3 (D. Minn. July 15, 2005) (Ericksen, J.) ("Rezac does not allege facts to support the conclusion that USF intentionally and improperly interfered with his prospective business relations.. . . Accordingly, the Court dismisses his counterclaim for tortious interference with prospective contractual relations.").  As such, Pacific Union's Count Eight must be dismissed.

**G.    Pacific Union's Count Ten Must be Dismissed as to Cardinal Because the Complaint does not Allege Essential Elements of the Claim.**

The Complaint's Count Ten must be dismissed against Cardinal because Pacific Union has not offered plausible allegations regarding a meeting of the minds on the alleged conspiracy and because Pacific Union's underlying claims against Cardinal fail. Moreover, Pacific Union cannot satisfy civil conspiracy stringent pleading standard through conclusory recitation of the elements.

> To establish a civil conspiracy, plaintiffs must show five elements: (1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action to be taken; (4) the commission of one or more unlawful overt acts; and (5) damages as the proximate result of the conspiracy.

*In re Temporomandibular Joint (TMJ) Implants Prods. Liability Litigation*, 113 F.3d 1484, 1498 (8th Cir. 1997).  "To properly plead civil conspiracy, [the plaintiff] must allege sufficient facts to allow a reasonable inference that defendants agreed to accomplish an unlawful purpose and took concerted actions to achieve that purpose." *Tatone v. SunTrust Mortg., Inc.*, 857 F. Supp. 2d 821, 838 (D. Minn. 2012).  Moreover, "'a plaintiff must allege with sufficient particularity and demonstrate with specific material facts that the parties reached some agreement and conspired together' to injure the plaintiff." *Id.* (quoting *Gometz v. Culwell*, 850 F.2d 461, 463-64 (8th Cir. 1988)).  In addition, "defendants' actions must be based on an underlying intentional tort." *Id.* (quoting *Marty H. Segelbaum, Inc. v. MW Capital, LLC*, 673 F. Supp. 2d 875, 880 (D. Minn. 2009)).  Pacific Union's claim fails under this standard.

Pacific Union's allegations referencing Cardinal in Count Ten consist of the following:

212.    As set forth more fully above, the individual Defendants, Cardinal, and others agreed upon a plan to commit an illegal act or to accomplish by unlawful means a purpose not in itself unlawful.

213.    Upon information and belief, presently unidentified persons employed by or acting on behalf of Cardinal were co-conspirators acting in concert with Defendants.

214.    Defendants sought to divert Pacific Union's employees, customers, information from Pacific Union to Cardinal, and to cripple Pacific Union's ability to fairly compete in business once Defendants' resignations were finally announced.

215.    Defendants combined to accomplish the purpose of the conspiracy by, among other actions: [laundry list of allegations repeated from its claims above].

216.    Cardinal is jointly and severally liable for the torts of its employees or agents under the vicarious liability doctrines of respondeat superior and vice principal liability.

217.    Cardinal is jointly and severally liable for the torts of the co-Defendants as Cardinal was a co-conspirator.

This recitation of the elements of the claim do not meet Pacific Union's pleading burden under *Iqbal* and *Twombly*, let alone the more stringent pleading standard required for civil conspiracy claims.  These allegations consist entirely of legal conclusions and do not allege fact necessary to state a claim for civil conspiracy.  As a result, Pacific Union's Count Ten must be dismissed.

## H.    Pacific Union's Claims Against Cardinal Should Be Dismissed With Prejudice.

Plaintiff has pled nearly identical claims in Hennepin County District Court. While dismissal under Rule 12(b)(6) is ordinarily without prejudice, the Court may dismiss

claims with prejudice if "re-pleading would be futile." *Ikechi v. Verizon Wireless*, No. 10-CV-4554 JNE/SER, 2011 WL 2118797, at *5 n. 6 (D. Minn. Apr. 7, 2011), report and recommendation adopted, No. CIV. 10-4554 JNE/SER, 2011 WL 2118791 (D. Minn. May 25, 2011); *see also Newman v. JP Morgan Chase Bank, N.A.*, 81 F. Supp. 3d 735, 746 n.7 (D. Minn. 2015). In determining whether re-pleading would be fruitful, courts consider any related complaints the plaintiff has previously filed. *See Bernstein v. Extendicare Health Servs., Inc.*, 607 F. Supp. 2d 1027, 1032 (D. Minn. 2009) ("As the Amended Complaint failed to identify any solid ground on which the Plaintiff could stand in this litigation, the Court respectfully concludes that another attempt to amend would not likely be fruitful."); *see also Hutter v. Schraml*, 51 F.R.D. 519, 522 (E.D. Wis. 1970) ("Considering both the past and current lawsuits, it is my holding that dismissal without leave to amend must be ordered since these plaintiffs have already had numerous opportunities to assert their claims.").

Courts also consider the specificity of the claims in the dismissed complaint. A "bare bones, kitchen sink complaint that [does] not distinguish between the defendants and which describes legally and factually unsupported (and unsupportable) claims" cannot be cured on re-pleading. *See Tatone*, 857 F. Supp. 2d at 840 (dismissing with prejudice all but one claim of common law fraud, which was dismissed without prejudice). Although Plaintiff may aspire to find support for its claims "at some point down the road, *Iqbal* and *Twombly* clearly contemplate a standard of pleading higher than that reflected in [Plaintiff's] Complaint." *See Tatone*, 857 F. Supp. 2d at 840. Pacific Union's Complaint falls within this category and should be dismissed with prejudice.

## CONCLUSION

Pacific Union's "kitchen sink" Complaint against Cardinal must be dismissed.

The Complaint fails to allege wrongdoing by, or authorized by, Cardinal. Pacific Union's claims fail to allege essential elements of its causes of actions and seeks to fulfill others through implausible and conclusory assertions. As such, Pacific Union's claims against Cardinal must be dismissed. Because re-pleading once again would be futile, the claims should be dismissed with prejudice.

Dated: February 21, 2018

**GRAY, PLANT, MOOTY,**
**  MOOTY & BENNETT, P.A.**

By  s/ Samuel W. Diehl
   Dean A. LeDoux (#176433)
   Samuel W. Diehl (#0388371)
   Emily E. Mawer (#0396329)
500 IDS Center
80 South Eighth Street
Minneapolis, Minnesota 55402
Phone: (612) 632-3000

**ATTORNEYS FOR DEFENDANT**
**CARDINAL FINANCIAL COMPANY**

GP:4846-9011-9261 v3