# EXHIBIT 1

Filed in Fourth Judicial District Court
1/5/2018 3:01 PM
Hennepin County, MN

CASE TYPE: EMPLOYMENT

STATE OF MINNESOTA

COUNTY OF HENNEPIN

DISTRICT COURT

FOURTH JUDICIAL DISTRICT

Pacific Union Financial, LLC,

Court File No.:

Plaintiff,

vs.

**VERIFIED COMPLAINT**

David C. Dingman, Scott C. Smith and
Nicholas W. Brownell

Defendants.

COME NOW Plaintiff Pacific Union Financial, LLC ("Pacific Union") and as for its Complaint against Defendants David C. Dingman, Scott C. Smith and Nicholas W. Brownell (collectively, the "Defendants"), states and alleges as follows:

## I. INTRODUCTION

Plaintiff Pacific Union Financial files the following Verified Original Complaint against Defendants seeking redress and damages as a result of Defendants' breaches of contract, misappropriation of confidential information and trade secrets, fraud, and continuous and concerted tortious interference with Pacific Union's business relations, contracts, and post-employment obligations.

As alleged with greater particularity herein, Pacific Union has endured a broad and pervasive scheme of unlawful solicitation of its management employees, mortgage loan originators ("MLOs"), loan processors, and administrative support personnel, as well as the unauthorized disclosure and use of Pacific Union's confidential information and trade secrets, all of which was orchestrated by Defendants, acting both independently and in concert with one

**EXHIBIT 1**

Filed in Fourth Judicial District Court
1/5/2018 3:01 PM
Hennepin County, MN

another. Defendants abused their access to Pacific Union's confidential customer information, and employed artifice as a means of gathering valuable information that was otherwise not readily accessible to them. The purpose and design of Defendants' conduct was to misappropriate the loan files in Pacific Union's possession and to funnel this business to competitive rival mortgage lender, Cardinal Financial Company, in anticipation of Defendants' plans to leave Pacific Union and to take its business for Defendants' financial gain.

This solicitation scheme also has had a cascading effect, directly resulting in the loss of numerous other employees, further impacting Pacific Union's relationship with its customers. Defendants' unlawful business practices have been taken with full knowledge of the fact that Defendants have induced employees of Pacific Union to breach their agreements incident to their employment or, alternatively, to breach their common law duties. Defendants' wrongful and unlawful conduct has been calculated and systematic. Accordingly, Pacific Union files this Complaint seeking injunctive relief and recovery of its damages against Defendants and in support of same would submit the following:

## II.    PARTIES

1.    Plaintiff Pacific Union Financial, LLC is a California limited liability company doing business in Texas with its principal place of business in Irving, Texas.

2.    Defendant Nicholas W. Brownell ("Brownell") is a natural person working in Dakota County, Minnesota. Upon information and belief, Brownell may be served at his residence located at 19341 Huntington Avenue, Lakeville, Minnesota 55044, through counsel, or wherever he may be found.

3.    Defendant David C. Dingman ("Dingman") is a natural person. Upon information and belief, he resides and works in Hennepin County, Minnesota. Upon information and belief, Dingman may be served at his residence located at 16320 59th Avenue N., Plymouth, Minnesota

Filed in Fourth Judicial District Court
1/5/2018 3:01 PM
Hennepin County, MN

55446 through counsel, or wherever he may be found. Prior to December 28, 2017, Pacific Union employed Dingman in the position of Vice President, Distributed Retail.

4.  Defendant Scott C. Smith ("Smith") is a natural person. Upon information and belief, he resides and works in Hennepin County, Minnesota. Upon information and belief, Smith may be served at his residence located at 10020 Holloway Farms Road, Greenfield, Minnesota 55357, through counsel, or wherever he may be found. Prior to December 28, 2017, Pacific Union employed Smith in the position of Vice President, Distributed Retail.

5.  John Does 1 through 10. Pacific Union is ignorant of the names of the opposing parties named herein as John Does 1 through 10. When the true names of John Does 1 through 10 are discovered, the process and all pleadings and proceedings in the action will be amended by substituting the true name.

### III. JURISDICTION AND VENUE

6.  This Court has subject matter jurisdiction over this dispute under Minn. Stat. § 484.01.

7.  This court has personal jurisdiction over Defendants Brownell, Dingman and Smith because they are domiciled within the State of Minnesota.

8.  Venue is proper in this court pursuant to Minn. Stat. § 542.09 because, among other things, a substantial part of the acts and omissions giving rise to the legal claims asserted herein arose within Hennepin County, Minnesota.

### IV. FACTUAL BACKGROUND

**A.** <u>**The Nature of the Case**</u>

9.  Pacific Union brings this action because, throughout December 2017 and prior, Defendants jointly conspired to carry out a massive "lift out" scheme designed to transfer entire branches of Pacific Union personnel in Minnesota, Wisconsin, and Iowa. Defendants carefully

Filed in Fourth Judicial District Court
1/5/2018 3:01 PM
Hennepin County, MN

orchestrated and coerced the simultaneous departure of a large group of valued Pacific Union employees, key executives and managers—all while still working and being paid by Pacific Union. In so doing, Defendants succeeded in delivering a substantial chunk of Pacific Union's business to a direct competitor, Cardinal Financial Company. As part of the scheme, Defendants also spared no effort to obtain and misappropriate Pacific Union's trade secrets, confidential and proprietary business information, non-public consumer data, including customer lists, databases of prospects, active loan files in process, and consumer loan files (Pacific Union's "Proprietary and Confidential Information"). Having then done so, Defendants tried to cover up their misdeeds by deleting data as they exited. Defendants' massive theft of information, customers, and personnel, was pulled off as an "inside job," leveraging the access Pacific Union entrusted to them to operate its business. The heist was also aided with numerous direct lies and deceptive actions.

10.     Defendants have used, and are using Pacific Union's Proprietary and Confidential Information to unlawfully compete with Pacific Union, and to take, or attempt to take, Pacific Union's customers, customer lists, and active customer loan applications and in-process loan files from Pacific Union.

11.     By acting in concert and conspiring to misappropriate Pacific Union's Proprietary and Confidential Information, employees, and customers, while simultaneously being employed by Pacific Union, Defendants breached contractual and fiduciary duties of loyalty owed to Pacific Union, violated the Minnesota Uniform Trade Secrets Act, and committed numerous other common law torts, including fraud, tortious interference with contracts and prospective business relations.

-4-

Filed in Fourth Judicial District Court
1/5/2018 3:01 PM
Hennepin County, MN

12.     Defendants' conduct has directly caused, and will continue to cause, serious and imminent irreparable injury to Pacific Union's business.

13.     Pacific Union seeks a temporary restraining order, temporary injunction and permanent injunctive relief, as well as recovery of its actual damages against all Defendants, as well as the return of Pacific Union's stolen business information, and the cessation of all unauthorized use of Pacific Union's Confidential and Proprietary Information.

**B.     Pacific Union's Mortgage Lending Business**

14.     Pacific Union is a nationwide mortgage lender headquartered in Irving, Texas. Pacific Union provides mortgage loans through wholesale, retail, and correspondence origination channels and maintains a mortgage servicing operation to service many of the loans it originates. Pacific Union is approved as a lender and servicer for Fannie Mae and Freddie Mac, an FHA lender and Ginnie Mae issuer and holds licenses in 49 states and the District of Columbia. Pacific Union employs over 1,500 employees who serve Pacific Union clients and partners from offices in several states.

15.     Pacific Union's specialties in the mortgage lending business include residential retail lending, wholesale residential lending, correspondence lending, and loan servicing.

16.     Prior to December 28, 2017, Pacific Union employed Defendants Smith and Dingman in the position of Vice President, Distributed Retail. In this position, Smith and Dingman led and managed Pacific Union's retail lending business efforts in the North Central Region, an area that included all retail branch locations in the states of Minnesota, Wisconsin, and Iowa.

**B.     Cardinal Is a Direct Competitor of Pacific Union**

17.     Cardinal Financial Company is a direct competitor of Pacific Union in the mortgage industry. Until recently, Cardinal had offices in North Carolina, New York, Nevada,

138038511.2

Filed in Fourth Judicial District Court
1/5/2018 3:01 PM
Hennepin County, MN

Chicago, Arizona, Texas, California and Maryland, but did not have a substantial physical retail branch office presence in Minnesota, Wisconsin or Iowa.

18.    Cardinal originates mortgage lending products and targets customers throughout the United States. According to publicly available information on Cardinal's website, it offers mortgage lending products that include conventional mortgages, jumbo loans, FHA loans, VA loans, and USDA loans, which are all products that Pacific Union also markets on a nationwide basis, in direct competition with Cardinal.

19.    During the course of Defendants' work for Pacific Union, Defendants necessarily had access to employee names and contact information, documentation of borrower income, assets, and other indicia of creditworthiness. Customer-specific loan information possessed by Defendants included lists of past, pending and prospective customers, as well as customer-specific loan terms such as interest rates, fees and points, real estate closing dates, appraisal information, and credit rating scores, among other things, as well as sales lead records and complete customer loans files prepared in the application, processing, and underwriting process.

20.    Many of these documents to which Defendants had access as part of their employment with Pacific Union contained non-public personal information, all of which represents compiled confidential information gathered at great time and expense by Pacific Union as part of normal business. This information was contained in customer lists, lists of loans in process, pre-qualifications, and individual customer loan files maintained by Pacific Union ("PUF Confidential Information").

21.    To protect and keep confidential PUF Confidential Information, Pacific Union has implemented various policies and procedures that its employees are expected to follow. For example, Pacific Union maintains an Information Security Policy on its Company intranet that is

Filed in Fourth Judicial District Court
1/5/2018 3:01 PM
Hennepin County, MN

accessible by all Pacific Union employees. This Information Security Policy defines PUF

Confidential Information and requires the following precautions to safeguard this information:

> Confidential Information may not be disclosed to anyone unless there is reason to believe that the recipient is authorized to receive that information, and has a business need to have access to this information. This disclosure includes to other employees of Pacific Union. Confidential information may not be disclosed to any person or entity outside Pacific Union except as necessary or appropriate (i) pursuant to prior written authorization by the person or entity to whom the information pertains (or the legally authorized representative of such person or entity); (ii) to process customers' transactions and administer Pacific Union's products and services including disclosures to vendors pursuant to an agreement to provide products or services to or for Pacific Union, provided the arrangement provides appropriate protections for Confidential Information and provided that the agreement has been approved by Pacific Union's legal counsel; (iii) as required by law or regulation; or (iv) pursuant to the direction of legal counsel.

A true and correct copy of the Information Security Policy is attached to the Complaint as

Exhibit 1.

22.     In order to protect its confidential information and trade secrets, including

customer lists, borrower loan files and documentation, Pacific Union's business pipeline reports,

Pacific Union employs a number of information security measures. For example, in order to

access Pacific Union's electronic data, Pacific Union employees each use unique password-

protected logins, and are required to change those passwords every 90 days. External data

transfers are monitored through a program called ShareFile, which encrypts files for transmission

outside of the Pacific Union network. Access to Pacific Union's various programs and systems

require their own individualized passwords and logins, which similarly require routine password

changes. Pacific Union also employs an access management team that revokes credentials and

locks employees out of Pacific Union's systems upon their termination from the company.

Pacific Union actively monitors systems to check for suspicious behavior based on reports and

potential alerts generated by the software used by the company.

Filed in Fourth Judicial District Court
1/5/2018 3:01 PM
Hennepin County, MN

23.     Additionally, the Company maintains policies aimed at safeguarding PUF Confidential Information in its employee handbook, including policies relating to non-disclosure of PUF Confidential Information, the return of Company property (including PUF Confidential Information) upon an employee's termination, and clean desks. A true and correct copy of these policies from Pacific Union's employee handbook are attached to the Complaint as Exhibit 2. Pacific Union also requires its employees to acknowledge the policies in Pacific Union's employee handbook, which all Defendants did during their employment with Pacific Union.

**C.     Defendants' Coordinated Plan to Solicit Employees and Misappropriate Pacific Union's Confidential Information and Trade Secrets**

24.     On information and belief, Dingman and Scott began discussing moving Pacific Union's branches to Cardinal Financial by having discussions with one of Cardinal's executives and a former Pacific Union employee, Brian Mitchell, beginning in April 2017, or earlier.

25.     On December 4, 2017, Dingman requested a specialized customer report from a Pacific Union sales coordinator in Texas. Specifically, Dingman wanted a spreadsheet containing the contact information for "all prospects" in the North Central region. Dingman invented a cover story, falsely stating that he desired a mailing list to send "recipe cards" to prospective customers as the reason for needing this report. On information and belief, Dingman's request for "all prospects" was calculated to be used as a tool to use data compiled by Pacific Union to divert the "pipeline" of pending and prospective business to Cardinal Financial.

26.     Dingman's ruse successfully netted him the pipeline report he wanted. On December 7, 2017, Dingman received a spreadsheet with the name and mailing address for over 2,000 Pacific Union customers and prospective customers, along with information about the property address associated with loan, the loan amount, and the present status of the loan, among other information. One week after receiving the North Central Region pipeline report, Dingman

-8-

Filed in Fourth Judicial District Court
1/5/2018 3:01 PM
Hennepin County, MN

forwarded the report to his private, non-Pacific Union e-mail address, "ddingman58@gmail.com."

27. On information and belief, on approximately December 5, 2017, Dingman and Scott called for a telephone conference with a Pacific Union Branch Manager and MLOs in Pacific Union's branch in Green Bay, Wisconsin. During the call, Dingman and Scott informed the participants that they were moving to Cardinal Financial. On information and belief, they told the participants that Pacific Union would not be competitive in the future, and that they had been in contact with other Cardinal personnel in other parts of the country who were doing well after leaving Pacific Union. During the call, on information and belief, Smith and Dingman were asked by participants about non-solicitation agreements and obligations to Pacific Union, and they responded that there were none. Dingman and Smith told the participants that if they did not want to leave Pacific Union, they would be out of work because the Pacific Union branch would be gone.

28. To evade detection by Pacific Union, Dingman and Smith also instructed the participants to use their personal e-mail accounts to communicate about these activities, and instructed the Pacific Union employees to submit employment applications to Cardinal Financial.

29. On information and belief, during the same period of time, Mikel Bushmaker, a Pacific Union Branch Manager in Green Bay, Wisconsin, in the North Central Region overseen by Smith and Dingman, negotiated the terms of his proposed employment with Cardinal directly through Smith and Dingman.

30. On December 7, 2017, Bushmaker notified Smith and Dingman that he had submitted his application with Cardinal Financial, but requested additional clarification, from Dingman and Smith, about the guaranteed compensation he could expect to be provided for the

Filed in Fourth Judicial District Court
1/5/2018 3:01 PM
Hennepin County, MN

first three or four months of employment with Cardinal, in order to ease his wife's financial concerns.

31. On information and belief, Smith and Dingman engaged in similar and negotiations with all of the other Pacific Union managers in the North Central region in the weeks leading up to December 2017.

32. On information and belief, on approximately December 5, 2017, Bushmaker instructed the Pacific Union MLOs in the Green Bay branch not to submit any more loan files to Pacific Union because the loans would all be going to Cardinal Financial. Upon information and belief, subsequently, Bushmaker also admitted that he had been sending loan applications from Pacific Union to Cardinal Financial.

33. During December 2017, the number of new loan applications dried up at six Pacific Union branches in the North Central Region, all of which were then being overseen by Smith and Dingman.

34. On information and belief, on approximately December 11, 2017, numerous offers of employment from Cardinal Financial were addressed to Pacific Union employees working in the North Central Region. The letters stated that the employees would be reporting, as Cardinal employees, to managers who were at the time employed by Pacific Union. The letters provided a deadline of December 19, 2017, for acceptance.

35. The employment offers for the Pacific Union employees were stored on Dingman's computer. On information and belief, Dingman transmitted the Cardinal employment offers to Pacific Union employees while Dingman was still employed in his capacity as a Pacific Union Vice President.

Filed in Fourth Judicial District Court
1/5/2018 3:01 PM
Hennepin County, MN

36.     Dingman and Smith remained formally employed with Pacific Union, and were silent about their planned departure—except with respect to the individuals they were soliciting and recruiting to join them. On information and belief, all of Dingman and Smith's work at Pacific Union during December 2017 was focused on damaging Pacific Union's competitive position vis-à-vis their planned future employment with Cardinal Financial, and with furthering their own personal financial interests as future employees of Cardinal.

37.     On December 15, 2017, Dingman provided Bushmaker with the name and contact information for a Cardinal executive to speak with prior to submitting loan applications to Cardinal. Bushmaker reported that he had already sent four loan applications to Cardinal, was planning to send another one, and intended to "re-do" all of the pre-qualifications previously obtained at Pacific Union.

38.     On information and belief, on approximately December 17, 2017, a Pacific Union Branch Manager, Defendant Nicholas Brownell (Bloomington, Minnesota), uploaded a significant number of emails from his Pacific Union e-mail account (totaling approximately 5 gigabytes of data), along with a spreadsheet containing names and contact information, and utilized an internal file-transferring system to authorize the transfer of that uploaded data to his private web-based e-mail account, "nwilliam09@gmail.com."

39.     The size of the Brownell's data transfer triggered an alert on Pacific Union's data loss security systems. On or about December 19, 2017, Pacific Union's information security employee, Mark Wiseman ("Wiseman"), notified Brownell's supervisor, Smith, about Pacific Union's concerns about Brownell's data transfer. Specifically, Wiseman informed Smith that this could indicate Brownell's intention to leave Pacific Union and take the information with him.

-11-

Filed in Fourth Judicial District Court
1/5/2018 3:01 PM
Hennepin County, MN

40.     On information and belief, Smith knew, but did not reveal to Wiseman, that Brownell's file-sharing activity was being undertaken for exactly that reason. On information and belief, Smith had directed or approved of Brownell's actions in copying and retaining Pacific Union's data in anticipation of resigning. Despite knowing exactly what Brownell was up to, Smith feigned surprise and told Wiseman that he should discuss the issue with Brownell directly. Smith also noted that he would follow up with Brownell himself to ask why he might have done such a thing. Smith did not reveal, acknowledge or give any indication that Wiseman's suspicions about Brownell's intentions were correct. Smith's statements and omissions were intended to mislead Pacific Union not only about Brownell's plans, but his own as well.

41.     Wiseman followed up by directly asking Brownell about his data transfer activity. In response, Brownell also lied, explaining that he only uploaded his emails to ShareFile in order to serve as a "backup" to his Pacific Union email account. That was demonstrably false because later-accessed ShareFile records indicated that Brownell sent those files to his personal email account.

42.     On information and belief, Brownell's e-mail account contained confidential information and trade secrets, including, but not limited to: information about customer loan applications, sales leads, compensation, customer contact information, sensitive documentation of borrower income, credit scores, assets, debts, and other information customarily collected as part of the mortgage origination process.

43.     On December 18, 2017, Dingman made a request to Pacific Union's employee, Katie Mire, that a paid lead service through a third party (Lending Tree) be temporarily "turned off" for branches in Minnesota and Wisconsin, explaining that because many of MLOs in his

-12-

Filed in Fourth Judicial District Court
1/5/2018 3:01 PM
Hennepin County, MN

region would be taking time off and traveling over the holidays, and would not be able to follow up on leads. This was false.

44.     Pretext aside, Dingman requested that the lead service be "turned off" was so that those leads would not go to Pacific Union and could more easily be diverted to Cardinal. Dingman's explanation was made despite his knowledge of its falsity and was intended to mislead Pacific Union.

45.     On or about December 18, 2017, Dingman and Smith obtained a list of all Pacific Union loans that were then in process in their region. Upon information and belief, Dingman and Smith sought to exploit the list for their own benefit, and to facilitate the diversion of Pacific Union's active business to Cardinal Financial.

46.     On or about December 21, 2017, a Pacific Union MLO reported to Pacific Union's corporate offices that other MLOs were making preparations to leave the company.

47.     On December 22, 2017, Caleb Mittelstet, Pacific Union's Executive Vice President for the Distributed Retail Division, contacted Dingman and Smith and asked them about the rumors that they, or others, were planning to leave Pacific Union. Smith and Dingman denied that they were leaving and further explained that they fully intended to be work for Pacific Union in 2018. This was yet another intentional lie.

48.     On or about December 26, 2017, a Pacific Union Branch Manager reported that he had been asked, by Dingman and Smith, to attend a web-based training session hosted by Cardinal Financial. This "Cardinal training" took place before any North Central Region personnel, including Dingman and Smith, had resigned from Pacific Union.

49.     Other MLOs reported that Dingman and Smith told them that everyone in the Pacific Union branches would packing up and moving on December 29, 2017, and that if they

-13-

Filed in Fourth Judicial District Court
1/5/2018 3:01 PM
Hennepin County, MN

did not sign their offer letters from Cardinal they would be "left out," while the Pacific Union branch would be closed and they would lose their jobs. On information and belief, this was another lie intended to coerce all of Pacific Union's employees in the North Central Region to join Smith and Dingman and to resign their Pacific Union employment and accept the offers from Cardinal Financial.

50. On December 26, 2017, Caleb Mittelstet informed Dingman and Smith that they were in breach of their agreements not to solicit Pacific Union employees. Dingman and Smith again denied that they were leaving Pacific Union. However, mere minutes later, Smith tendered his resignation; and, on the following morning, Dingman e-mailed Mittelstet notice of his resignation.

51. In an attempt to cover up their pre-resignation activities, Dingman and Smith went to extensive efforts to delete all e-mail stored in their Pacific Union e-mail accounts. However, backup copies of their Pacific Union e-mail subsequently have been recovered after substantial investment of time and effort by Pacific Union.

52. Upon information and belief, Dingman, Smith and others acting at their direction attempted to hide their illicit activities from Pacific Union by using personal email accounts to coordinate their activities with Cardinal Financial during the time they were still employed with Pacific Union.

53. On December 27, 2017, Dingman, Smith, and Bushmaker e-mailed Pacific Union numerous unsigned "resignation letters" that were purportedly sent on behalf of dozens of other employees in the North Central Region. However, some employees reported to Pacific Union that they did not want to resign or go to work for Cardinal Financial, but were led to believe they had no choice.

-14-

Filed in Fourth Judicial District Court
1/5/2018 3:01 PM
Hennepin County, MN

54.     Upon learning that Waite had confirmed his lack of interest in employment with Cardinal, Dingman, Smith and Bushmaker began to apply more heavy-handed pressure tactics, telling Waite that they were "taking the branch" in Green Bay, Wisconsin. Dingman, Smith, and Bushmaker each directly solicited Waite for the purpose of coercing his resignation. In this instance, they were unsuccessful.

55.     On December 27, 2017, Smith e-mailed Mittelstet, requesting that Pacific Union transfer leases to six Pacific Union branches, as well as the telephone numbers associated with those branches. The branches identified were three located in Minnesota (Brooklyn Park, Bloomington, and Princeton); two in Wisconsin (Fort Atkinson and Green Bay); and one in Davenport, Iowa. At the time of Smith's inquiry, there were still employees actively working for Pacific Union in three of the six branch locations.

56.     On December 27, 2017, Pacific Union sent "cease and desist" letters to Dingman and Smith requesting that they stop soliciting Pacific Union employees, in violation of their agreements with Pacific Union. Dingman and Smith completely ignored the requests, and continued to contact and pressure Pacific Union employees who had not signed offers from Cardinal Financial.

57.     On December 28, 2017, John Waite received a text message from Bushmaker referring to Caleb Mittelstet as a "shithead" who was trying to jeopardize Waite's future by trying to get him to stay with Pacific Union. Bushmaker also sent text messages directly to Mittelstet, accusing him of "pissing on the fire with gas" in regards to Pacific Union's efforts to retain Waite.

58.     On December 28, 2017, a Branch Support Manager from Cardinal Financial, "Petra Cruz," sent an e-mail to Pacific Union, asking for Cardinal to be permitted to "assume"

-15-

Filed in Fourth Judicial District Court
1/5/2018 3:01 PM
Hennepin County, MN

the leases at the existing Pacific Union branch locations where some of the Pacific Union employees had submitted resignations:

> Not sure if you are the correct person who can assist me with the following request. I'm with Cardinal Financial, we are interested in assuming a few of your current spaces for the following locations. Would this be something you can assist me with, or could you please lead me in the right direction?
>
>> Brooklyn Park [Minnesota]
>> Bloomington [Minnesota]
>> Princeton [Minnesota]
>> Fort Atkinson [Wisconsin]
>> Green Bay [Wisconsin]
>> Davenport [Iowa]

59.     Pacific Union had, and still does have, active employees working in several of these branch locations.

60.     On information and belief, Dingman and Smith believed that Pacific Union would treat their actions as a *de facto* ceding of its entire North Central Region business to them and to Cardinal.

61.     On December 29, 2017, Dingman and Smith met with Rick Dusha, a Pacific Union MLO working in its branch in Brooklyn Park, Minnesota. Before the meeting, Dusha had advised Pacific Union that he had not made a decision to join Dingman and Smith at Cardinal. However, Dingman and Smith solicited Dusha with an offer of employment with substantially enhanced compensation, and Dusha accepted it, then resigned, along with loan processors working in his Brooklyn Park branch.

62.     On information and belief, the majority of Pacific Union's North Central Region employees began their "formal" employment with Cardinal on December 29, 2017, although they had been unofficially in training and working for Cardinal, at Smith and Dingman's direction, for weeks prior.

-16-

Filed in Fourth Judicial District Court
1/5/2018 3:01 PM
Hennepin County, MN

63.   The solicitation efforts undertaken by Dingman and Smith, during the course of their employment with Pacific Union and acting in concert with the other Defendants acting in concert with them, have resulted in the resignation of more than three dozen Pacific Union employees in Minnesota, Wisconsin, and Iowa.

64.   Furthermore, Pacific Union has been forced to substantially increase the employee compensation paid to employees who have not resigned, in order to retain those employees in the face of Dingman and Smith's solicitation efforts.

65.   Pacific Union continues to have active employees in several branches in Minnesota and Wisconsin. Upon information and belief, Dingman and Smith have personally, directly and indirectly solicited each of employees to leave Pacific Union, and those efforts are presently ongoing.

66.   Dingman and Smith have repeatedly made false, deceptive and malicious statements as strong-arm tactics to not merely solicit Pacific Union's employees, but to coerce potentially reluctant Pacific Union employees, to resign from Pacific Union. On information and belief, Dingman and Smith have caused Pacific Union's personnel to fear for their financial security with untrue statements that Pacific Union would abandon branches and terminate any employees in their region who did not resign and join Cardinal Financial Company.

67.   The Defendants actively worked in concert with each other, as well as with unknown co-conspirators, prior to and after their departure from Pacific Union. They conspired with one another to misappropriate and use of Pacific Union's Confidential and Proprietary Information, and to divert employees and customers from Pacific Union to Cardinal.

-17-

Filed in Fourth Judicial District Court
1/5/2018 3:01 PM
Hennepin County, MN

**D.** **Defendants Contractual Agreements With Pacific Union Prohibit Solicitation of Employees and Unauthorized Use and Disclosure of Confidential Information**

68.     Defendants Brownell, Dingman, and Scott each separately executed an enforceable "Branch Manager Agreement" at the inception of their respective employment with Pacific Union.

69.     A true and correct copy of Brownell's Branch Manager Agreement, dated June 1, 2014, is attached to the Complaint as Exhibit 3.

70.     A true and correct copy of Dingman's signed Branch Manager Agreement, dated March 24, 2014, is attached to the Complaint as Exhibit 4.

71.     A true and correct copy of Smith's signed Branch Manager Agreement, dated March 24, 2014, is attached to the Complaint as Exhibit 5.

72.     The Branch Manager Agreements signed by Defendants Brownell, Dingman, and Smith each contained the following enforceable provisions:

> **Section 5, Restrictions:** Employee, during the term of his/her employment shall not engage in any other real estate or mortgage related business without the prior written approval of Pacific Union. Employee shall not alone, or in concert with others, engage in any pursuit, activity, business or relationship that is, or could be, in competition with Pacific Union or is adverse to Pacific Union or branch manager's best interest.

> **Section 10, Confidentiality:** Employee agrees that all proprietary information of Pacific Union that Employee learns of or that may come into the possession of Employee during the term of employment, shall during the term of employment and thereafter neither directly or indirectly be used or disclosed, revealed, made available or disseminated to any person who is not an authorized employee of Pacific Union. Proprietary information includes but is not limited to (1) products, services, processes, training, business strategies and philosophies, manuals and reference guides; (2) investor and customer information, contract terms, rates and pricing structure; (3) marketing data, information, leads, lead generation and marketing plans; and (4) pricing, commission and rate information.

> **Section 11, Non-Solicitation Clause:** Employee acknowledges that Company invests substantial time, money and other resources to recruit, train and retain talented individuals. Employee further acknowledges that Company's efforts in this regard promote the business goodwill of the company by fostering

-18-

Filed in Fourth Judicial District Court
1/5/2018 3:01 PM
Hennepin County, MN

productive, long-term relationships between Company, its employees and clients. In exchange for Company's investments set forth herein and to protect Company's business goodwill, Employee agrees that during his or her employment with Company and for a period of one (1) year following the termination of such employment for any reason, he or she shall not, either directly or indirectly, hire or retain any employee or officer of Company with whom Employee worked directly in the course of his or employment with Company hired on or after the Effective Date of Agreement. Further, Employee will not call on, solicit, induce, hire, or retain any such person, except any employees who were associated with Employee on or prior to the effective date of the transition, to terminate his or her employment with Company and will not assist any other person or entity in such a solicitation. Employee further agrees that he or she will not discuss, by any means whatsoever, with any such employee or officer of Company the termination of such individual's employment with Company during the time period set forth above.

**Section 12, Duty of Loyalty:** Employee acknowledges that, as an Employee of Company, Employee has a duty to do no act having a tendency to injure Company's business or financial interests. In exchange for the consideration set forth herein, Employee hereby contractually acknowledges and agrees that Employee will not violate this duty. Included within this provision is a prohibition on Employee from soliciting Company's customers, prospective customers, and employees for any reason other than Company's legitimate business purposes.

**Section 14, Termination:** ... Employee expressly acknowledges and agrees that all loans originated and contracts obtained by Employee during Employee's employment with Pacific Union are the sole and exclusive property of Pacific Union; without regard to whether Employee took the applications, Employee knows the borrower or the state of processing of such loans or performance of such contracts. Upon Employee's termination, such loans and contracts shall remain the sole and exclusive property of Pacific Union. Without the express written consent of the Pacific Union, Employee agrees that Employee shall take no action of any type to place such loans originated, and contracts obtained by Employee, with another lender...

73. Additionally, Defendants Dingman and Smith separately executed Branch Manager Compensation Agreements wherein each individual specifically agreed to be bound by the terms of the appended Retail Branch Operations Guide. This document contains Restriction, Confidentiality, Non-solicitation, Loyalty, and Termination provisions that are identical to those quoted in Paragraph 72 above.

-19-

Filed in Fourth Judicial District Court
1/5/2018 3:01 PM
Hennepin County, MN

74.     While still employed by Pacific Union, Defendants Dingman and Smith directly

and indirectly solicited the following Pacific Union employees, none of whom were employed at

the time Dingman and Smith first became employed by Pacific Union:

| Employee Name | Job Title | Hire Date | Branch |
|---|---|---|---|
| Gibbons, Jonathan M. | MLO | 03/23/2015 | Ft. Atkinson, WI |
| Boone, Alexander M. | MLO | 06/01/2015 | Brooklyn Park, MN |
| Prisk, Dale A. | MLO | 06/15/2015 | Ft. Atkinson, WI |
| Henderson, Christine R. | MLO | 09/21/2015 | Brooklyn Park, MN |
| Dusha, Rick A. | MLO | 01/11/2016 | Brooklyn Park, MN |
| Stidger, Monica A. | Loan Officer Assistant | 06/13/2016 | Bloomington, MN |
| Pitsch, Brian T. | MLO | 06/13/2016 | Ft. Atkinson, WI |
| Becker, Tonya R. | Loan Processor | 07/11/2016 | Ft. Atkinson, WI |
| Kelly, Jessica K. | Loan Officer Assistant | 09/19/2016 | Brooklyn Park, MN |
| Johnson, Dawn M. | Loan Officer Assistant | 10/31/2016 | Ft. Atkinson, WI |
| Dahlin Ruser, Dyannae M. | MLO | 11/28/2016 | Davenport, IA |
| Ernst, Tammy S. | Manager, Branch | 11/28/2016 | Davenport, IA |
| Meyer, Michelle | Loan Officer Assistant | 11/28/2016 | Davenport, IA |
| Ockerman, Kristen A. | MLO | 11/28/2016 | Davenport, IA |
| Hartwick, Samuel | Loan Officer Assistant | 01/23/2017 | Ft. Atkinson, WI |
| Miklya, Chad | MLO | 02/27/2017 | Bloomington, MN |
| Michl, Terri K. | Loan Processor | 04/24/2017 | Davenport, IA |
| Thompson, Brian T. | Manager, Branch | 04/24/2017 | New Hope, MN |
| Thorau, Janice | Loan Processor | 07/10/2017 | Brooklyn Park, MN |
| Bushmaker, Mikel J. | Manager, Branch | 07/24/2017 | Green Bay, WI |
| Siedschlag, Ricky L. | MLO | 07/24/2017 | New Hope, MN |
| Kitzman, Kimberly L. | Loan Processor | 09/05/2017 | Green Bay, WI |
| Wojack, Matthew M. | MLO | 09/11/2017 | Bloomington, MN |
| Gaboury, Graham T. | MLO | 09/25/2017 | Bloomington, MN |
| Noack, Jennifer A. | MLO | 09/25/2017 | Green Bay, WI |
| Maroon, Susan | MLO | 10/23/2017 | Davenport, IA |
| Talavera, Ruben C. | MLO | 11/06/2017 | Ft. Atkinson, WI |
| Waite, John | MLO | 11/13/2017 | Green Bay, WI |
| Bell, Shannon V. | MLO | 11/27/2017 | Green Bay, WI |
| Young, Dennis P. | MLO | 11/27/2017 | Green Bay, WI |

75.     The vast majority of the employees identified in the preceding Paragraph have

already resigned and accepted employment with Cardinal Financial.

138038511.2

Filed in Fourth Judicial District Court
1/5/2018 3:01 PM
Hennepin County, MN

76.     On information and belief, Defendants Dingman and Smith directly solicited Defendant Brownell, and Defendant Brownell directly solicited the employees working in his Brooklyn Park Branch, with the direction and assistance of Dingman and Smith.

77.     In addition, while Dingman and Smith were still employed by Defendants, they also successfully recruited numerous other employees (at least 14) who had been hired on the same date as Dingman and Smith, March 24, 2014. On information and belief, the individuals recruited by Dingman and Smith included Defendant Nicholas Brownell, and the branch manager of Pacific Union's Princeton, Minnesota, branch, Daniel Santa Lucia.

78.     Notwithstanding the express terms of the Agreements between Pacific Union and Defendants, on information and belief, Dingman and Smith, utilized confidential Pacific Union business information obtained while each was an employee in a Vice President position with Pacific Union to solicit Pacific Union's employees, and did so both before and after acceptance of employment with Cardinal.

79.     Based on Dingman's and Smith's access to confidential compensation information, Defendants have been able to successfully raid entire branches in the North Central Region.

80.     Dingman and Smith also used their managerial authority as executive employees of Pacific Union, to compel employees to attend training sessions with Cardinal Financial while all of them were still employed by Pacific Union.

81.     Dingman and Smith abused their authority as Pacific Union executives to deprive and divert business opportunities that belonged to Pacific Union. Specifically, on information and belief, Dingman and Smith directed subordinates, all of whom were still working for Pacific Union at the time, not to enter new transactions into Pacific Union's systems, and even went so

-21-

Filed in Fourth Judicial District Court
1/5/2018 3:01 PM
Hennepin County, MN

far so as to disable leads provided by Pacific Union's third party service, Lending Tree, so that Pacific Union would be deprived of the opportunity to obtain business from those leads.

82. In short, on information and belief, Dingman and Smith spent the final weeks of their employment with Pacific Union taking all conceivable steps ensure that once they left, Pacific Union's operations in their region would cease to function.

83. On information and belief, Defendants have also acted to ensure that as many Pacific Union customers having loans in process with Pacific Union transferred their loans to Cardinal Financial.

84. Defendants' improper solicitation efforts—even where the they have not succeeded in causing a Pacific Union employee to resign—have in many instances caused Pacific Union incur added expense in the form of employee retention costs (such salary increases, guaranteed incentive compensation and retention bonuses) that would not have been necessary, but for Defendants' aggressive, improper solicitation and recruitment of those employees.

85. In violation of their agreements, Dingman and Smith continue to recruit Pacific Union managers, MLOs, assistants, and processors working in Pacific Union's Minnesota branches that have not yet resigned.

86. On information and belief, Dingman and Smith began soliciting the management of Pacific Union's Blaine, Minnesota, branch during their employment with Pacific Union. There are over 20 remaining employees in Pacific Union's branch in Blaine, Minnesota, that, on information and belief, continue to be active targets for Dingman and Smith's recruitment efforts on behalf of Cardinal. Dingman and Smith's efforts to recruit the management and other

-22-

Filed in Fourth Judicial District Court
1/5/2018 3:01 PM
Hennepin County, MN

employees at the Blaine, Minnesota branch have included offers of employment and, upon information and belief, these solicitation efforts remain ongoing.

87.     The loss of the employees unlawfully solicited by Defendants, and attendant loss of customers, has caused and will continue to cause: increased recruitment and training costs; increased labor expenses, reduced productivity, diminished sales (present and future), lost profits (present and future), and diminished goodwill. Pacific Union has also incurred and will further incur attorneys' fees necessitated by Defendants' action.

## V. CAUSES OF ACTION

### A.     Count One - Violation of Minnesota Uniform Trade Secrets Act

88.     Pacific Union incorporates the foregoing paragraphs of its Complaint as if fully set forth herein.

89.     As set forth more fully above, Pacific Union's confidential and proprietary trade secrets include, without limitation, Pacific Union's non-public financial information, details on loan transactions and loan files, customer lists and prospective customer lists, sales leads and borrower pre-qualifications, terms of loans and prospective loans with borrowers and applicants seeking mortgages from Pacific Unions, and all such similar information necessary for Pacific Union to conduct its business in a competitive market place.

90.     Pacific Union's trade secrets are of value to Pacific Union's competitors, such as Cardinal, and Defendants have actively transferred such information to Cardinal for the use and benefit of Defendants and Cardinal.

91.     Pacific Union derived independent economic value from the fact that its trade secrets were confidential and were critical to the success of Pacific Union's mortgage business.

92.     Pacific Union undertook considerable efforts to ensure the secrecy of such information, including requiring all employees with access to agree to and sign

-23-

Filed in Fourth Judicial District Court
1/5/2018 3:01 PM
Hennepin County, MN

confidentiality/non-disclosure agreements prior to the start of employment. All Defendants knew and were aware that Pacific Union's trade secrets were not to be disclosed to others outside of the business.

93.    Defendants knew that the information being obtained from Pacific Union's computer systems and other sources constituted confidential information and trade secrets. Nevertheless, Dingman and Smith not only took Pacific Union's trade secrets themselves, but also directed or permitted others to make and retain copies of confidential information before resigning. Dingman and Smith also undertook extensive and concerted efforts to conceal from Pacific Union that this misappropriation was occurring.

94.    Defendants were aware that Pacific Union's trade secrets were being derived from or through a person who had improperly utilized the confidence given to them to transmit the trade secrets back to Pacific Union.

95.    Defendants misappropriated Pacific Union's trade secrets by acquiring them through unlawful means and disclosing and using them for the benefit of Pacific Union's competitor, Cardinal Financial Company, and contrary to Pacific Union's interests, all in violation of the Minnesota Uniform Trade Secrets Act.

96.    On information and belief, Defendants' misappropriation began in December 2017. Pacific Union's trade secrets still remain in possession of Defendants, and upon information and belief, have been disclosed to others without Pacific Union's authorization.

97.    As a direct and proximate result of Defendants' wrongful conduct, Pacific Union has suffered and will continue to suffer substantial financial harms, imminent and irreparable injury, including loss of the confidentiality of its trade secrets, loss of goodwill, loss of business opportunities, and other continuing harm.

-24-

Filed in Fourth Judicial District Court
1/5/2018 3:01 PM
Hennepin County, MN

98.    The losses and harm to Pacific Union continue and cannot be remedied by damages alone.

99.    Pacific Union has no adequate remedy at law for sufficient compensation for the wrongs committed by Defendants.

100.    Defendants have acted willfully, maliciously, and with reckless disregard to the rights of the Pacific Union, entitling Pacific Union to recovery of double damages and recovery of its reasonable attorneys' fees.

101.    Pacific Union is entitled to a judgment in its favor for Defendants' violation of the Minnesota Uniform Trade Secrets Act, and requests actual and double damages, attorneys' fees, temporary and permanent injunctive relief, including but not limited to the immediate return of all of Pacific Union's confidential and proprietary business information, an order directing all Defendants to refrain from using such confidential information and doing business with all customers obtained in whole or in part through the use of Pacific Union's confidential and proprietary information, and such other and further relief to which Pacific Union is entitled.

**B.    Count Two - Breach of Duty of Loyalty**

102.    Pacific Union incorporates the foregoing paragraphs of its Complaint as if fully set forth herein.

103.    Minnesota imposes a common law duty on employees to act with loyalty to their employers.

104.    The duty of loyalty prohibits an employee from engaging in certain activities that are contrary to the employer's interests, including soliciting or diverting the employer's customers for the benefit of others, or otherwise engaging in activity directly competitive with the employer.

-25-

Filed in Fourth Judicial District Court
1/5/2018 3:01 PM
Hennepin County, MN

105. Defendants each breached their duties of loyalty to Pacific Union by engaging in the following actions, among others: diverting potential sources of business away from Pacific Union; direct Pacific Union employees from submitting borrower applications to Pacific Union; and soliciting, encouraging and/or coercing Pacific Union employees to terminate their employment with Pacific Union.

106. Defendants failed to act solely for the benefit of Pacific Union during their employment with Pacific Union.

107. Defendants used Pacific Union's information, facilities, property, and computer systems to promote their personal interests and the interests of Cardinal Financial Company, all of which was contrary to Pacific Union's interest.

108. Defendants also encouraged active, in-process borrowers to move their business from Pacific Union to Cardinal Financial.

109. As a direct and proximate result of the Defendants' unlawful actions, Pacific Union has suffered, is suffering, and will continue to suffer substantial financial harm, imminent and permanent irreparable injury, loss of the confidentiality of its proprietary business information, goodwill, business opportunity, and other damages.

110. Defendants have acted intentionally, willfully, maliciously, and with reckless disregard for Pacific Union rights.

111. Pacific Union has no adequate remedy at law to compensate for the losses it has incurred and will continue to incur as a result of Defendants' unlawful conduct.

112. Pacific Union is entitled to a judgment in its favor for Defendants' breaches of their duty of loyalty, and requests actual, temporary and permanent injunctive relief, including but not limited to the return of all of Pacific Union's confidential and proprietary business

-26-

Filed in Fourth Judicial District Court
1/5/2018 3:01 PM
Hennepin County, MN

information, an order directing all Defendants to refrain from using such confidential information and doing business with all customers obtained in whole or in part through the use of Pacific Union confidential and proprietary information, and such other and further relief as the Court deems just.

### C.    <u>Count Three - Breach of Fiduciary Duty (Dingman and Smith)</u>

113.    Pacific Union incorporates the foregoing paragraphs of its Complaint as if fully set forth herein.

114.    Defendants Dingman and Smith were Regional Vice Presidents at Pacific Union.

115.    As Vice Presidents, Dingman and Smith owed certain fiduciary duties to Pacific Union, which encompass the duty of care as well as the duty of loyalty to Pacific Union in executing employment duties.

116.    Contrary to these duties, Dingman and Smith sought to undermine Pacific Union from within, by damaging its ability to compete, retain its employees, obtain new business from prospective customers, and to continue serving existing customers upon their departure.

117.    Contrary to these duties, Dingman and Smith facilitated, covered up and attempted to mislead Pacific Union with respect to their own actions and the actions of others under their supervision and direction who coordinated with them in misappropriating, disclosing, and using Pacific Union's confidential and proprietary information for their own benefit and the benefit of Cardinal Financial Company.

118.    In taking the actions set forth above, and in conspiring to take Pacific Union's employees, information and customers through unlawful means, Dingman and Smith breached their fiduciary duties to Pacific Union.

119.    As a direct and proximate result of the Dingman and Smith's breaches of their fiduciary duties to Pacific Union, has suffered, is suffering, and will continue to suffer

138038511.2

Filed in Fourth Judicial District Court
1/5/2018 3:01 PM
Hennepin County, MN

substantial financial harm, imminent and irreparable injury, loss of the confidentiality of its proprietary business information, goodwill, business opportunities, and other damages.

120.    Dingman and Smith acted intentionally, willfully, maliciously, and with reckless disregard for Pacific Union's rights.

121.    Pacific Union has no adequate remedy at law to compensate for the losses it has incurred and will continue to incur as a result of Dingman's and Smith's unlawful conduct.

122.    Pacific Union is entitled to a judgment in its favor for Dingman's and Smith's breaches of their fiduciary duty, and requests actual, temporary and permanent injunctive relief, including but not limited to the immediate return of all of Pacific Union's confidential and proprietary information, an order directing all Defendants to refrain from using such confidential information and doing business with all customers obtained in whole or in part through the use of Pacific Union's confidential and proprietary information, disgorgement of all profits arising from Defendants' illegal activity, and such other and further relief to which Pacific Union is entitled.

### D.    Count Four - Breach of Contract

123.    Pacific Union incorporates the foregoing paragraphs of its Complaint as if fully set forth herein.

124.    Each Defendant signed and executed contracts with Pacific Union as a condition of employment in exchange for their employment and compensation. Valid and enforceable contracts existed between each of the Defendant and Pacific Union.

125.    During Defendants' employment, Pacific Union fulfilled its obligations by providing Defendants with promised wages, access to Pacific Union's confidential information, and Pacific Union's customers.

126.    As set out in specific detail above, each Defendant's contract with Pacific Union contained clauses specifically prohibiting the solicitation of Pacific Union's employees during

-28-

Filed in Fourth Judicial District Court
1/5/2018 3:01 PM
Hennepin County, MN

the course of employment with Pacific Union and thereafter. Further, each Defendant's contract prohibited the unauthorized use and disclosure of Pacific Union's confidential and proprietary information. Each Defendant's contract with Pacific Union prohibited engaging in activity competitive with Pacific Union while employed by Pacific Union.

127.    Each Defendant, in direct breach of his respective contract with Pacific Union, actively solicited, encouraged and coerced Pacific Union's employees to resign their employment and to accept employment with a competitor.

128.    Defendants, in direct breach of their respective contracts with Pacific Union, actively engaged in an another mortgage related business during their employment with Pacific Union without the prior written approval of Pacific Union, and directly engaged pursuits, activities, and business with Cardinal Financial Company that was in direct competition with Pacific Union.

129.    Defendant Brownell, in direct breach of his contract with Pacific Union, copied, took and used Pacific Union's confidential and proprietary business information by transferring business-related e-mail, spreadsheets, and contacts to his personal e-mail account.

130.    Defendant Dingman, in direct breach of his contract with Pacific Union, took and used Pacific Union's proprietary lists of customers and prospects by transferring this information to his personal e-mail account for his own post-employment use as a Cardinal manager.

131.    As a direct and proximate result of Defendants' numerous breaches of their respective contracts with Pacific Union, Pacific Union has suffered, is suffering, and will continue to suffer substantial financial harms, imminent and irreparable injury, and the loss of the confidentiality of its proprietary business information and trade secrets, goodwill, business opportunities, and other damages.

-29-

Filed in Fourth Judicial District Court
1/5/2018 3:01 PM
Hennepin County, MN

132.    Pacific Union has no adequate remedy at law to compensate for the losses it has incurred and will continue to incur as a result of Defendants' unlawful conduct.

133.    Pacific Union is entitled to a judgment in its favor for Defendants' contractual breaches, and requests actual damages, temporary and permanent injunctive relief, including but not limited to the immediate return of all of Pacific Union's confidential and proprietary business information, an order directing all Defendants to refrain from using such confidential information and doing business with all customers obtained in whole or in part through the use of Pacific Union's confidential and proprietary information, and such other and further relief to which Pacific Union is entitled.

### E.    Count Five - Tortious Interference With Existing Contracts

134.    Pacific Union incorporates the foregoing paragraphs of its Complaint as if fully set forth herein.

135.    As more fully set forth above, Pacific Union has long-standing existing relationships with customers in the form of mortgage loan contracts.

136.    As more fully set forth above, Pacific Union has long-standing existing relationships with its employees, including branch managers, MLOs, assistants, and processors.

137.    Each Defendant knew of Pacific Union's existing contractual relationships with its mortgage loans customers and its employees.

138.    Defendants intentionally and tortiously, without justification or excuse, interfered with Pacific Union's contractual relationships, for their own gain, and to the detriment of Pacific Union by (1) encouraging Pacific Union's employees to terminate their employment; (2) encouraging Pacific Union's employees to misappropriate and misuse Pacific Union property and confidential information; and (3) inducing customers having an existing loan application in process with Pacific Union to transfer their loan applications to Cardinal Financial.

Filed in Fourth Judicial District Court
1/5/2018 3:01 PM
Hennepin County, MN

139.     Defendants employed wrongful and coercive means to force employees to resign, by spreading false information that employees would lose their jobs with Pacific Union if they did not accept offers of employment with Cardinal.

140.     Additionally, Defendants Dingman and Smith induced the other Defendants to breach the non-solicitation clauses in their own contracts with Pacific Union by instructing branch managers to solicit and recruit their branch-level employees to resign from Pacific Union and accept offers of employment with Cardinal Financial Company.

141.     Additionally, Defendants Dingman and Smith encouraged, facilitated and concealed other employees' actions taken to gather Pacific Union's confidential and proprietary information to use in their employment with Cardinal Financial, for the purpose of interfering with Pacific Union's contractual relationships. The actions of these other employees, including Brownell, violated their confidentiality and non-disclosure obligations to Pacific Union.

142.     As a direct and proximate result of Defendants' unlawful conduct, Pacific Union has suffered and will continue to suffer substantial financial harm, imminent and irreparable injury, and the loss of the confidentiality of Pacific Union's confidential and proprietary information, goodwill, business opportunities, and other damages.

143.     Defendants have acted intentionally, willfully, maliciously, and with reckless disregard of Pacific Union's rights.

144.     Pacific Union has no adequate remedy at law to compensate it for the losses it has incurred and will continue to incur as a result of Defendant' unlawful conduct.

145.     Pacific Union is entitled to a judgment in its favor for Defendants' tortious interference with contractual and business relationships, and request actual damages, temporary and permanent injunctive relief, an order directing all Defendants to refrain from encouraging

-31-

Filed in Fourth Judicial District Court
1/5/2018 3:01 PM
Hennepin County, MN

Pacific Union employees to resign their employment, using Pacific Union's confidential and proprietary information, and doing business with all customers obtained, in whole or in part, through the use of Pacific Union's confidential and proprietary information, and such other further relief to which Pacific Union is entitled.

**F.** **Count Six - Tortious Interference With Prospective Contractual and Business Relations**

146. Pacific Union incorporates the foregoing paragraphs of its Complaint as if fully set forth herein.

147. As further set forth in full above, Pacific Union not only had existing contracts with employees and customers, but also prospective contractual relationships, including loan applications in process with Pacific Union that had been obtained using Pacific Union's proprietary leads, and through the efforts of Pacific Union employees that would were reasonably anticipated to result in revenue and profits for Pacific Union upon the closing of the underlying real estate purchase or refinance activity.

148. Defendants knew of these prospective loan relationships and intentionally and tortiously, without justification or excuse, interfered with and are continuing to interfere with those relationships in furtherance of their own interests, and contrary to Pacific Union's interests. Defendants have diverted these same customers away from Pacific Union and encouraged or directed them to move their business to Cardinal Financial Company, thereby severing the prospective contractual relationship between Pacific Union and its prospective customers.

149. As a direct and proximate result of the Defendants' actions, Pacific Union has suffered, is suffering, and will continue to suffer substantial financial losses, imminent and irreparable injury, and the loss of the confidentiality of its confidential and proprietary business information and trade secrets, goodwill, business opportunities, and other damages.

-32-

Filed in Fourth Judicial District Court
1/5/2018 3:01 PM
Hennepin County, MN

150.    Defendants have acted intentionally, willfully, maliciously, and with reckless disregard of the rights of Pacific Union.

151.    Pacific Union has no adequate remedy at law to compensate for the losses it has incurred and will continue to incur as a result of Defendants' unlawful conduct.

152.    Pacific Union is entitled to a judgment in its favor for Defendants' tortious interference with its prospective contractual and business relationships, and request actual damages, preliminary and permanent injunctive relief, including but not limited to the immediate return of all of Pacific Union's confidential and proprietary business information, an order directing all Defendants to refrain from using such confidential information and doing business with all customers obtained in whole or in part through the use of Pacific Union's confidential and proprietary information, and such other and further relief to which Pacific Union is entitled.

### G.    Count Seven - Fraud

153.    Pacific Union incorporates the foregoing paragraphs of its Complaint as if fully set forth herein.

154.    On or about December 4, 2017, Dingman duped a Pacific Union employee into creating a spreadsheet containing contact and loan information for "all prospects" in the North Central Region by inventing a false story about wanting to mail out "recipe cards" to these customers.

155.    Defendants Dingman and Smith made these representations of fact with knowledge that the statements were false.

156.    The misrepresentations of Dingman and Smith were material.

157.    Defendants Dingman and Smith intended that Pacific Union act upon these misrepresentations by not terminating their employment, and by continuing to grant Defendants'

-33-

Filed in Fourth Judicial District Court
1/5/2018 3:01 PM
Hennepin County, MN

continued access to Pacific Union's information systems and its customers loan files and contact information, and preparing specialized reports with lists of customers and prospects.

158.   Pacific Union was ignorant that Dingman's and Smith's representations were false when they were made.

159.   The spreadsheet, obtained by Dingman through artifice and for wrongful purposes, contained contact and loan information for over 2,000 Pacific Union customers and prospective customers.

160.   On or about December 21, 2017, and again five days later, Dingman and Scott falsely denied having plans to leave Pacific Union and affirmatively represented their intention to work at Pacific Union in 2018.

161.   Pacific Union justifiably and reasonably relied on Dingman's and Smith's representations by not immediately terminating their employment, not immediately terminating access to Pacific Union's confidential information, and not immediately taking other defensive measures to protect the business and prevent further loss of Pacific Union's employees, customers, and information.

162.   As a direct and proximate result of Pacific Union's reliance on Dingman's and Smith's misrepresentations, Pacific Union has suffered substantial financial losses, immediate and irreparable injury, and the loss of the confidentiality of its confidential and proprietary business information and trade secrets, goodwill, business opportunities, and other damages.

163.   Defendants have acted intentionally, willfully, maliciously, and with reckless disregard of the rights of Pacific Union.

164.   Pacific Union has no adequate remedy at law to compensate for the losses it has incurred and will continue to incur as a result of Defendants' unlawful conduct.

Filed in Fourth Judicial District Court
1/5/2018 3:01 PM
Hennepin County, MN

165.   Pacific Union is entitled to a judgment in its favor for Defendants' tortious interference with its prospective contractual and business relationships, and request actual, preliminary and permanent injunctive relief, including but not limited to the immediate return of all of Pacific Union's confidential and proprietary business information, an order directing all Defendants to refrain from using such confidential information and doing business with all customers obtained in whole or in part through the use of Pacific Union's confidential and proprietary information, and such other and further relief to which Pacific Union is entitled.

## H.   Count Eight - Civil Conspiracy

166.   Pacific Union incorporates the foregoing paragraphs of its Complaint as if fully set forth herein.

167.   As set forth more fully above, Defendants Dingman, Smith, Brownell and other Defendants agreed upon a plan to commit an illegal act or to accomplish by unlawful means a purpose not in itself unlawful.

168.   Upon information and belief, presently unidentified persons employed by or acting on behalf of Cardinal Financial Company were co-conspirators acting in concert with Defendants Dingman, Smith, Brownell and other Defendants.

169.   Defendants sought to divert Pacific Union's employees, customers, information from Pacific Union to Cardinal Financial Company, and to cripple Pacific Union's ability to fairly compete in business once Defendants' resignations were finally announced.

170.   Defendants combined to accomplish the purpose of the conspiracy by, among other actions: (1) inducing other employees to breach contractual obligations not to use or disclose Pacific Union's confidential and proprietary information through the unauthorized copying, taking of that data; (2) acting to tortiously interfere with Pacific Union's ability to obtain sales leads from prospective customers and its third party service providers; (3) tortiously

-35-

Filed in Fourth Judicial District Court
1/5/2018 3:01 PM
Hennepin County, MN

interfering with Pacific Union's prospective contractual and business relations with customers having loans in process with Pacific Union, by encouraging those borrowers to move their loans to another lender; (4) undertaking a disloyal scheme to recruit, solicit, and coerce Pacific Union employees to resign and accept employment offers with Cardinal Financial; (5) undertaking a disloyal scheme to recruit, solicit, and coerce Pacific Union employees to resign and accept employment offers with Cardinal Financial; (6) tortiously interfering with Pacific Union's contracts prohibiting solicitation of its employees by requiring, encouraging, aiding and coercing Pacific Union employees subject to a non-solicitation clause to solicit branch-level employees to resign their employment and accept employment with Cardinal Financial Company; (7) requiring Pacific Union employees to engage in "training" activities sponsored by a competitor for the purpose of training the employees to submit loans to Cardinal Financial Company instead of Pacific Union, all while the Pacific Union employees were still employed and being paid to work exclusively for Pacific Union; (8) instructing branch-level employees to act with disloyalty to Pacific Union by withholding new loan applications from Pacific Union; (9) using false, deceptive, and fraudulent representations to obtain detailed reports about thousands of Pacific Union customers and prospective customers that to be taken and used for the benefit of Defendants and Cardinal Financial Company; (10) making fraudulent misrepresentations to Pacific Union's executive management denying that Defendants or others were intending to leave Pacific Union; and (10) withholding information from Pacific Union about employees actively engaged in misappropriating Pacific Union's proprietary e-mails to be used for purposes of competing with Pacific Union.

171.    One or more of actions above, taken in furtherance of Defendants' conspiracy, took place in Minnesota.

Filed in Fourth Judicial District Court
1/5/2018 3:01 PM
Hennepin County, MN

## VI. JURY DEMAND

172.    Pacific Union demands a trial by jury on all issues so triable.

## VII. PRAYER FOR RELIEF

WHEREFORE, Pacific Union respectfully requests that the Court enter Judgment in its favor and against Defendants as follows:

1.    Awarding Judgment in favor of Pacific Union and against Defendants on Pacific Union's claims for Violation of Minnesota Uniform Trade Secrets Act, Breach of Duty of Loyalty, Breach of Fiduciary Duty, Breach of Contract, Tortious Interference with Existing Contracts, Tortious Interference with Prospective Contractual and Business Relations, Fraud, and Civil Conspiracy;

2.    A temporary restraining order against Defendants;

3.    A temporary injunction and permanent injunction against Defendants;

4.    Pacific Union's actual and reasonable damages in an amount exceeding $50,000;

5.    Exemplary damages;

6.    Attorneys' fees, costs and expenses;

7.    Prejudgment and post-judgment interest at the highest rate allowed by law on all amounts awarded herein; and

8.    Such other and further relief as Pacific Union is entitled to receive.

Filed in Fourth Judicial District Court
1/5/2018 3:01 PM
Hennepin County, MN

## VERIFICATION

I, Caleb Mittelstet, declare as follows:

I am over the age of 21 and have not been convicted of a felony.

I am authorized by Pacific Union Financial, LLC, in the above entitled and numbered cause, as a representative empowered to make this verification.

I have read the foregoing Verified Complaint.

Based upon my personal knowledge, and facts and information reasonably available to Pacific Union Financial, LLC, including its business records and documents, including those that are included as exhibits thereto, or discussions with Pacific Union's employees, the factual allegations contained in Section IV of such Verified Complaint are verified as true and correct.

I declare under penalty of perjury that everything I have stated in this document is true and correct and that this declaration was executed on January 4, 2018, in Dallas County, Texas.

_____
Caleb Mittelstet

Filed in Fourth Judicial District Court
1/5/2018 3:01 PM
Hennepin County, MN

Dated: January 5, 2018

Respectfully submitted,

WINTHROP & WEINSTINE

By: *s/ Michael A. Rosow*
Michael A. Rosow, #317998
Quin C. Seiler, #0396699

Capella Tower | Suite 3500
225 South Sixth Street
Minneapolis, MN 55402-4629
Phone: (612) 604-6734
Facsimile: (612) 604-6834
mrosow@winthrop.com

Filed in Fourth Judicial District Court
1/5/2018 3:01 PM
Hennepin County, MN

EXHIBIT  1

Filed in Fourth Judicial District Court
1/5/2018 3:01 PM
Hennepin County, MN



**Pacific Union Financial**

We work hard to make mortgage easy™

**Internal Use Only – 09/05/2017**

# Information Security Policy
Corporate

Internal Only

09/05/2017

## Table of Contents

Information Security Policy .................................................................................................................1

Table of Contents ..............................................................................................................................1

Policy Statement................................................................................................................................3

Chief Technology Officer ...................................................................................................................3

Chief Information Security Officer ......................................................................................................3

Risk Assessment ...............................................................................................................................3

Annual Reporting ...............................................................................................................................4

Employees and Associates................................................................................................................4

Procedures Introduction and Overview .............................................................................................4

Applicability........................................................................................................................................5

Information Classification...................................................................................................................6

Additional Policies that support the Information Security Policy ........................................................7

    Acceptable Use of Technology Policy ...........................................................................................7

    Change management Policy...........................................................................................................7

    Clean Desk Policy..........................................................................................................................7

    Security Badge Policy ....................................................................................................................7

    Business Continuity Plan ...............................................................................................................7

    Disaster Recovery Plan .................................................................................................................7

    Encryption Policy............................................................................................................................7

*This document is limited to current Pacific Union Financial policy and practice and should not be construed as legal advice, legal opinion, or any other advice on specific facts or circumstances. Such policy and practice is subject to change. The recipient should contact its legal counsel for legal advice. **For business and professional use only. Not for consumer distribution.** All loans subject to approval. Certain conditions and fees apply. Pacific Union Financial, LLC NMLS #2221. Equal Housing Opportunity.*

Filed in Fourth Judicial District Court
1/5/2018 3:01 PM
Hennepin County, MN

Mobile Device and Removable Media Policy ........................................................................7
Physical Security Policy ......................................................................................................7
User Access Management Policy ...........................................................................................7
Incident Response ...............................................................................................................7
Cyber Security Policy ..........................................................................................................7
IT Asset Management Policy ................................................................................................7
IT Incident Management Policy ...........................................................................................7
Password Protection Policy .................................................................................................7
Privacy Breach Policy .........................................................................................................7
Record Retention Policy ......................................................................................................7
Employee Handbook ...........................................................................................................7
Vendor Oversight Policy ......................................................................................................7

*This document is limited to current Pacific Union Financial policy and practice and should not be construed as legal advice, legal opinion, or any other advice on specific facts or circumstances. Such policy and practice is subject to change. The recipient should contact its legal counsel for legal advice. **For business and professional use only. Not for consumer distribution.** All loans subject to approval. Certain conditions and fees apply. Pacific Union Financial, LLC NMLS #2221. Equal Housing Opportunity.*

-42-

Filed in Fourth Judicial District Court
1/5/2018 3:01 PM
Hennepin County, MN

## Information Security Policy

Pacific Union Financial, LLC

## Policy Statement

The Executive Management Team of Pacific Union Financial, LLC (Pacific Union) believes that the security of Pacific Union's physical assets and facilities as well as our customer's information is an essential priority. The Executive Management Team will ensure that the commitment to security is constantly communicated by management through Pacific Union's policies, procedures and its training curriculum. The development, implementation, maintenance and training of Pacific Union's Information Security efforts will be guided by a periodic Risk Assessment of the enterprise information systems.

## Chief Technology Officer

The Chief Technology Officer (CTO) or the CTO's qualified designee is responsible for all aspects of Information Technology not limited to Infrastructure, Service Desk, Information Security, Quality Assurance, Systems testing, Application Development, Application Support and Information Management.

## Chief Information Security Officer

The Chief Information Security Officer (CISO) reports to the office of CTO and is responsible for assessing the risks associated with unauthorized disclosure or use of customer information and implementing procedures to minimize those risks to Pacific Union. The CISO has the responsibility for ensuring that Pacific Union's security policies and procedures are communicated to employees, and as relevant, to others providing products or services to or for Pacific Union including but not limited to third-party service providers, consultants, and vendors.

The CISO also has responsibility for developing and maintaining the Information Security Program as it relates to technology. This includes but is not limited to system development life cycle ('SDLC') methodologies, system change control, version control, email encryption, data center access, intrusion detection and other prudent measures designed to prevent unauthorized access to systems and data.

In addition, the CISO will:

- Work in conjunction with Risk, Legal and Compliance, regarding the dissemination of information on new and amended laws and regulations applying to privacy and the protection of consumer information;
- Coordinate the implementation of employee training programs related to information security for Pacific Union;
- Assist in the investigation and resolution of consumer privacy questions and complaints directed to Pacific Union;
- Coordinate and assist during regulatory examinations regarding Information Security.

## Risk Assessment

Risks that threaten the security, confidentiality and integrity of information possessed by Pacific Union exist both internally and externally, and can range from innocent employee or third-party vendor

This document is limited to current Pacific Union Financial policy and practice and should not be construed as legal advice, legal opinion, or any other advice on specific facts or circumstances. Such policy and practice is subject to change. The recipient should contact its legal counsel for legal advice. **For business and professional use only. Not for consumer distribution.** All loans subject to approval. Certain conditions and fees apply. Pacific Union Financial, LLC NMLS #2221. Equal Housing Opportunity.

-43-

Filed in Fourth Judicial District Court
1/5/2018 3:01 PM
Hennepin County, MN

## Information Security Policy

Pacific Union Financial, LLC

mis-handling of information to purposeful intrusion by outside parties. Pacific Union is entrusted with non-public information related to consumers and residential mortgage borrowers, which typically encompasses electronic and paper collections of confidential information. In order to assess and minimize the risk associated with the potential loss of this information, Pacific Union shall conduct a periodic Risk Assessment of its information systems to further identify and assess the sources and types of risk specific to Pacific Union. Pacific Union will utilize the then current FFEIC Cybersecurity Risk Assessment Tool. The Risk Assessment will inform the design of the Information Security Policy and its supporting policies, shall allow for revision of controls to respond to technological developments and evolving threats, and shall be updated as reasonably necessary to address changes to Pacific Union's information systems.

### Annual Reporting

The CTO and the CISO shall provide an annual report to the Executive Management Team on the status of the security program. The report will discuss Pacific Union's compliance with all regulatory guidelines concerning information security, material matters addressing issues such as Risk Assessment determinations and control decisions; service provider arrangements; results of penetration testing; security breaches or violations and management's responses; training completion statistics, and recommendations for changes or additions to the security program. This annual report will be due on December 15 of each year. Any remediation to systems or policies adopted by the Executive Management Team will be completed prior to the calendar year end.

### Employees and Associates

All Company employees, as well as any others providing products and services to or for Pacific Union, including but not limited to consultants, temporary workers, and vendors, shall be required to take appropriate steps to protect Pacific Union's confidential information, data files, software programs, physical equipment and other information systems placed at their disposal. This includes any and all policies that may be in effect pertaining to security such as clean desk, Internet use, email use or visitor access policies. Any consultant, temporary employee, vendors, third-party servicers, or other entity that may be granted access to Pacific Union's data, applications or systems, must sign a non-disclosure agreement approved by in-house legal counsel. New employees will be required to satisfactorily complete the information security training module. All employees will be required to complete information security training annually.

### Procedures Introduction and Overview

The Pacific Union Financial Information Security Policy and Procedures was developed to provide for the protection of personnel, property, facilities, information and assets of Pacific Union. The principal objectives are to deter, detect and prevent losses, and to limit potential harm to consumers and customers of Pacific Union and to limit potential liability of Pacific Union arising from improper use of any company assets, including but not limited to data, applications, systems, and network. In addition, the manual seeks to provide guidelines for responses appropriate to various contingency situations.

This document is limited to current Pacific Union Financial policy and practice and should not be construed as legal advice, legal opinion, or any other advice on specific facts or circumstances. Such policy and practice is subject to change. The recipient should contact its legal counsel for legal advice. For business and professional use only. Not for consumer distribution. All loans subject to approval. Certain conditions and fees apply. Pacific Union Financial, LLC NMLS #2221. Equal Housing Opportunity.

-44-

Filed in Fourth Judicial District Court
1/5/2018 3:01 PM
Hennepin County, MN

# Information Security Policy

Pacific Union Financial, LLC

The policy complies with the requirements of the Gramm-Leach-Bliley Act Privacy Safeguards Rule, including 16 CFR 314. The policy also includes an Information Security Program that has as its objectives the following points:

- To ensure the security and confidentiality of customer information.
- To protect against any reasonably anticipated threats or hazards to the security or integrity of such information.
- To protect against unauthorized access to or use of such information or systems that could result in substantial harm or inconvenience to any customer.
- To protect against unauthorized access to physical equipment running Pacific Union's systems whether managed by Pacific Union or a third-party.
- To protect against any reputation or financial damage to Pacific Union.

## Applicability

The policy takes into account the nature of Pacific Union as a lender that offers services to customers through the Internet and its Call Center; however, the use of the branch offices, mail, and Loan Officers as customer interaction channels is also addressed. Each channel has its own particular level of risk that must be assessed, with actions taken to mitigate those risks.

The policy and procedures apply to the following:

- Employees of Pacific Union, contractors, temporary workers, and consultants performing services on behalf of Pacific Union.
- Any organization or individual with whom Pacific Union has a contract to provide products or services to or for Pacific Union.
- Information in all forms, including oral, written, image and electronic.
- Physical and logical (non-physical) protection, including protection of physical assets and premises.
- All modes of information processing including, but not limited to, manual methods, hardware and software networks, other devices and information disposal techniques.
- Information used by Pacific Union that originates outside of internal sources including, but not limited to, vendors, contractors, customers, regulators, other enterprises and the public domain.
- Pacific Union's information resources used by, shared by, or in the custody of others.

Technology is critical to the success of Pacific Union. Pacific Union's technology and services must permit access to the customer information necessary to permit Pacific Union to conduct business with its customers. At the same time, access must be appropriately safeguarded to preclude unauthorized access to, or use of, customer information, company assets, and or company premises. Our Executive Management Team has determined that the confidential information on Pacific Union's information technology systems as well as confidential information that is collected and stored in Pacific Union offices are of equal risk. The appropriate safeguards, as determined by the Risk Assessment, will be implemented to ensure that all information either stored electronically or in paper format is protected.

This document is limited to current Pacific Union Financial policy and practice and should not be construed as legal advice, legal opinion, or any other advice on specific facts or circumstances. Such policy and practice is subject to change. The recipient should contact its legal counsel for legal advice. **For business and professional use only. Not for consumer distribution.** All loans subject to approval. Certain conditions and fees apply. Pacific Union Financial, LLC NMLS #2221. Equal Housing Opportunity.

-45-

Filed in Fourth Judicial District Court
1/5/2018 3:01 PM
Hennepin County, MN

# Information Security Policy

Pacific Union Financial, LLC

## Information Classification

Confidential Information means:

- Customer Information – Any non-public personal information about a customer, whether in paper, electronic or any other form that is maintained by, or on behalf of, Pacific Union.
- Business Information – Any non-public information about Pacific Union, its respective business operations, customer or prospect lists, pricing information, business plans or business and financial results, including information that others have provided to Pacific Union and Pacific Union has promised to keep confidential.
- Employee Information – Any non-customer information Pacific Union possesses about its employees. This includes compensation data, performance ratings, health information, benefits information, and other information required to be retained by Human Resources.

Inappropriate disclosure of confidential information can violate privacy regulations and Pacific Union's Privacy Policy. Unauthorized release of confidential information can cause significant harm to consumers, can cause a breach of contract with third parties, provide competitors with a business advantage, and damage the reputation of Pacific Union. Additionally, there may be financial impacts to Pacific Union and/or the individual improperly disclosing information in the form of fines, reparations or civil penalties.

Therefore, all reasonable precautions must be taken to safeguard confidential information as follows:

- Confidential Information may not be disclosed to anyone unless there is reason to believe that the recipient is authorized to receive that information, and has a business need to have access to this information. This disclosure includes to other employees of Pacific Union.
- Confidential Information may not be disclosed to any person or entity outside Pacific Union except as necessary or appropriate (i) pursuant to prior written authorization by the person or entity to whom the information pertains (or the legally authorized representative of such person or entity); (ii) to process customers' transactions and administer Pacific Union's products and services including disclosures to vendors pursuant to an agreement to provide products or services to or for Pacific Union, provided the arrangement provides appropriate protections for Confidential Information and provided that the agreement has been approved by Pacific Union's legal counsel; (iii) as required by law or regulation; or (iv) pursuant to the direction of legal counsel.

This document is limited to current Pacific Union Financial policy and practice and should not be construed as legal advice, legal opinion, or any other advice on specific facts or circumstances. Such policy and practice is subject to change. The recipient should contact its legal counsel for legal advice. **For business and professional use only. Not for consumer distribution.** All loans subject to approval. Certain conditions and fees apply. Pacific Union Financial, LLC NMLS #2221. Equal Housing Opportunity.

-46-

Filed in Fourth Judicial District Court
1/5/2018 3:01 PM
Hennepin County, MN

# Information Security Policy

Pacific Union Financial, LLC

---

## Additional Policies that support the Information Security Policy

**Acceptable Use of Technology Policy**

**Change management Policy**

**Clean Desk Policy**

**Security Badge Policy**

**Business Continuity Plan**

**Disaster Recovery Plan**

**Encryption Policy**

**Mobile Device and Removable Media Policy**

**Physical Security Policy**

**User Access Management Policy**

**Incident Response**

**Cyber Security Policy**

**IT Asset Management Policy**

**IT Incident Management Policy**

**Password Protection Policy**

**Privacy Breach Policy**

**Record Retention Policy**

**Employee Handbook**

**Vendor Oversight Policy**

---

*This document is limited to current Pacific Union Financial policy and practice and should not be construed as legal advice, legal opinion, or any other advice on specific facts or circumstances. Such policy and practice is subject to change. The recipient should contact its legal counsel for legal advice. **For business and professional use only. Not for consumer distribution.** All loans subject to approval. Certain conditions and fees apply. Pacific Union Financial, LLC NMLS #2221. Equal Housing Opportunity.*

-47-

Filed in Fourth Judicial District Court
1/5/2018 3:01 PM
Hennepin County, MN

EXHIBIT 2

who are aware of suspected misconduct, abuse of Company assets, or other violations of Company Policy are responsible for reporting such matters to their supervisor or Human Resources.

## 2.2 "At-Will" Employment Relationship

Each employee's employment relationship with Pacific Union is voluntarily entered into, and employees are free to resign at any time, with or without notice. Similarly, the Company is free to end any employment relationship at any time, with or without cause and with or without notice. Accordingly, there is no promise that your employment will continue for a set period of time or that an employee's employment will be terminated only under particular circumstances. The relationship between the Company and the employee is and always will be one of voluntary employment 'at-will.' Only the CEO or President of the Company can enter into an agreement contrary to this policy. Any such agreement must be in writing and signed by both the employee and the CEO or the President.

## 2.3 Conflict of Interest

No employee shall directly or indirectly engage in any outside business or financial activity that will in any way conflict with the interests of the Company or that interferes with an employee's ability to fully perform his or her duties. Such activity may result in termination of employment. Any such possible conflict should be discussed with your supervisor and Human Resources to avoid any future problems.

## 2.4 Confidential

### 2.4.1 Definition of Confidential Information

Confidential Information means, where applicable by law, any business processes and practices, manual, policies, financial information, accounting records, employee lists, vendor lists, supplier lists sales information, original works of authorship, forecasts, analyses, compilations, documents, records, data, customer information, client lists, computer disks or memories, or reports containing or otherwise reflecting information relating to Company or its business, its clients and their businesses and/or such services or products of Company (including without limitation, information pertaining to the capacity, design capability, performance or usage of Company). Confidential information includes all of the foregoing information whether or not it has been designated as confidential.

Employee understands that the above list is not exhaustive, and that Confidential Information also includes other information that is marked or otherwise identified as confidential or proprietary, or that would otherwise appear to a reasonable person to be confidential or proprietary in the context and circumstances in which the information is known or used.

### 2.4.2 Confidentiality of Customer and/or Client information

Our clients and other parties with whom we do business entrust Pacific Union with important information relating to their businesses. It is our policy that all information considered confidential will not be disclosed to external parties or to employees without a "need to know."

If there is a question of whether certain information is considered confidential, the employee should first check with his or her immediate supervisor.

This policy is intended to alert employees to the need for discretion at all times and is not intended to inhibit normal business communications. All inquiries from the media must be referred to Human Resources.

### 2.4.3 Non-Disclosure of Proprietary and Confidential Information

All Confidential Information shall remain the sole and absolute property of the Company, and employees shall never, including after termination of employment directly or indirectly use Confidential Information for any purpose, nor shall an Employee disclose, disseminate, reproduce, share, or likewise make available, such Confidential Information to any person or entity other than Company, without the prior written authorization of the Company, where applicable by law. All company property including records, documents, and other material which were supplied to an employee by the Company and/or that the Employee acquired in the course of his or her shall be returned immediately upon termination or resignation from employment with the Company.

Confidential items include information containing or reflecting information related to Company or its business, its clients and their businesses and/or such services or products of Company. It also includes information created by the Employee during employment for benefit of Employer.

## 2.5 Solicitations

### 2.5.1 Solicitations of employees

Solicitation of employees for most reasons constitutes an unwanted intrusion into an employee's time and/or money. We believe that employees should not be harassed, disturbed, or disrupted in the performance of their job duties. For this reason, solicitation of any kind by an employee of another employee is prohibited while either person is on working time. Similarly, the distribution of advertising material, handbills, or printed or written literature of any kind in working areas of our Company is prohibited at all times.

To avoid harassment by strangers, solicitation of any kind by non-employees is prohibited at all times. The distribution of literature by non-employees on Company premises is also prohibited at all times.

The Company reserves the right to take action, up to and including termination, with regard to those individuals who are unable to conduct their behavior within acceptable standards as spelled out by this policy.

- Using, possessing, buying, selling, or being under the influence of illegal drugs or medications that could impair the employee's ability to perform job duties;

- Unauthorized possession, use, purchase, transfer, or sale of alcoholic beverages during working hours on Company premises or worksites while representing the Company or reporting to work under the influence of alcohol or otherwise being impaired;

- Alterations or falsifications of time sheet, expense report, personnel, or other documents or records of the Company; intentional or deliberate mischarging of labor;

- Fighting or other disorderly conduct;

- Threatening, aggressive, abusive or intimidating behaviors;

- Dishonesty, fraud, theft or sabotage against the Company, its customers or its employees;

- Unauthorized use of material, time, equipment or property of the Company or of the customer;

- Gambling of any type on Company property; and/or

- Engaging in such other practices as the Company determines may be inconsistent with the ordinary and reasonable rules of conduct necessary to the welfare of the Company, its employees or customers.

Employees should report any situation they believe violates an applicable law, regulation, federal guideline, or Company policy within thirty (30) days of the event.


Additionally, involuntary termination could also occur as a result of reduction in staff. In the event of an involuntary termination due to a reduction in force/downsizing, change in company direction, or job elimination, the Company may provide a severance benefit for the affected employee. This severance benefit does not apply to termination for cause, refusal to be reassigned or refusal to be relocated, or to accept a comparable job offer within the organization and is considered a voluntary resignation.

**2.20.3 Return of Pacific Union Property:**

If an employee's employment is terminated for any reason (voluntary or involuntary), the employee agrees to immediately surrender to Pacific Union all assets of Pacific Union including but not necessarily limited to: keys, pagers, charge cards, loan files, supplies, personnel files, financial statements, and any other work product and Confidential Information of Pacific Union.

Employees whose job responsibilities do not specifically include driving as an essential function, but who are issued a cell phone for business purposes are also expected to abide by the provisions above. Under no circumstances are employees allowed to place themselves at risk to fulfill business needs.

## 6.9 Clean Desk Requirements

Pacific Union is committed to complying with all applicable federal and state laws and regulations governing the safeguarding of personal and confidential information. The intent of the Policy is to:

- Ensure customer and proprietary Company information is treated with the highest degree of security and confidentiality;
- Minimize disorganization, reducing time searching for misplaced items; and
- Convey an image of professionalism and competence to visitors.

It is the responsibility of each employee to consider the security of the information they have access to and to protect that information accordingly. Each employee must adhere to this policy by:

- Maintaining a neat work environment during business hours.
- Refraining from cluttering the work area with Post-It® or other handwritten notes displaying sensitive information such as User IDs, passwords, loan numbers, etc.
- Placing all non-essential documents and items in a secure area and out of view when hosting visitors in the work area.
- Removing customer or proprietary information from your desk during any extended absence (i.e., lunch break, Company meetings, etc.).
- Always clearing your desktop at the end of the work day and securing documents containing customer and proprietary information in a locked drawer or cabinet.
- Removing all documents from all printers and fax machines as soon as they are printed.
- Always lock your computer when workspace is unoccupied (Ctrl+Alt+Delete).

Employees are expected to follow the spirit and intent of this policy. Periodic sweeps of work areas may be conducted by your manager during work and/or non-work hours to verify adherence to the policy. Violations will be brought to the attention of the respective personnel for appropriate follow-up action.

### 6.9.1 Violations

Violations of any guidelines listed in this Information Systems and Security policy may result in disciplinary action, up to and including immediate termination. If necessary, the Company will advise appropriate legal officials of any illegal violations.

Filed in Fourth Judicial District Court
1/5/2018 3:01 PM
Hennepin County, MN

# EXHIBIT 3

Filed in Fourth Judicial District Court
1/5/2018 3:01 PM
Hennepin County, MN



**PacificUnionFinancial** LLC
YOUR INTERESTS ARE COVERED

### BRANCH MANAGER AGREEMENT

This agreement ("Agreement") is made the day of <u>June 1, 2014,</u> ("Effective Date") by and between Pacific Union Financial, LLC ("Pacific Union" or "Company") and <u>Nick Brownell,</u> ("Employee").

WHEREAS, Pacific Union is engaged in the residential mortgage loan business, including the origination of such loans; and

WHEREAS, Employee is employed as a branch manager of Pacific Union in its branch located at <u>2051 Killebrew Drive, #314, Bloomington, MN 55425</u> to not only manage his or her branch, but to also originate residential mortgage loans. Employee and Pacific Union desire to enter into this agreement based upon the following terms and conditions:

1. TERM: Employee shall be an employee at will and may be terminated at any time with or without cause.

2. DUTIES: Employee's primary duties shall be to manage his or her branch and originate residential mortgage loans meeting the guidelines of Pacific Union and such other duties as Employee may from time to time be assigned. Branch Manager shall have sole responsibility of the Branch Office staffed by the Branch Manager. This responsibility shall include, but not be limited to, the profitability of that Branch Office.

3. EXCLUSIVE EMPLOYMENT: Employee agrees that Company may prohibit any outside employment that directly competes with or otherwise conflicts with Company's essential business interests, including outside employment prohibited by the Federal Housing Administration (FHA) guidelines, such as outside employment in mortgage lending, real estate, or a related field. Further, Employee will immediately notify Company of any employment in violation of such guidelines and cease employment with Company immediately.

4. BUSINESS RELATIONSHIPS: Employee attests that no contract or agreement exists that would prohibit or inhibit Employee's performance of required job functions with Company. Employee further attests that no discussions with Company occurred prior to Employee's start date with Company that could be considered a violation of any contract or agreement with a previous employer, and that Employee did not, and will not prospectively, participate in any activity, including the recruitment of any other Company employee, that would violate any such contract or agreement. Company shall not involve Employee in any recruiting, or other, activities that may be considered a violation of any Employee obligations to a previous employer.

5. RESTRICTIONS: Employee, during the term of his/her employment shall not engage in any other real estate or mortgage related business without the prior written approval of Pacific Union. Employee shall not alone, or in concert with others, engage in any pursuit, activity, business or relationship that is, or could be, in competition with Pacific Union or is adverse to Pacific Union or branch manager's best interest.

6. COMPLIANCE WITH LAW: Employee represents that he/she is knowledgeable of all laws and regulations applicable to the services to be performed by Employee in the management of his or her branch and in the origination of residential mortgage loans, and agrees to abide by all such laws and regulations. Employee also recognizes the importance of maintaining the confidentiality of personal information gathered and maintained in the course of his/her employment and agrees to comply with all federal and state privacy laws including, but not limited to, Title V of the federal Gramm-Leach Bliley Act and the regulations and guidelines there under and other similar state laws. Moreover,

PAGE 1 OF 6

COPYRIGHT PACIFIC UNION FINANCIAL, LLC
DRBM.20140312

Filed in Fourth Judicial District Court
1/5/2018 3:01 PM
Hennepin County, MN

Employee shall take all steps to obtain and maintain all individual licenses, registrations and other approvals as required by either state or federal law for Employee to perform his/her duties on behalf of Pacific Union. Employee must, at all times, give Pacific Union access to his/her licensing records. Removal of access on the NMLS system could result in immediate termination. Employee agrees to not solicit or originate any loans in a state in which he/she is not licensed. Employee further understands that he/she is only permitted to be paid in accordance with the most recent compensation plan on file with Human Resources and understands that accepting payments not documented in the plan is not only a violation of the law, but also Pacific Union's policy.

7.  QUALIFICATIONS: Employee represents that he/she is licensed or otherwise qualified by law and experience to engage in the profession of a branch manager/mortgage loan originator in the state or states in which Employee will be working.

8.  WORK HOURS: Employee agrees to use his/her best efforts to meet Pacific Union's production goals during the scheduled working hours as may from time to time be designated by Pacific Union. Employee is an exempt employee and will be paid a salary in accordance with the Compensation Plan attached Exhibit A.

9.  QUALITY CONTROL: Employee shall adhere strictly to the quality control standards of Pacific Union.

10. CONFIDENTIALITY: Employee agrees that all proprietary information of Pacific Union that Employee learns of or that may come into the possession of Employee during the term of employment, shall during the term of employment and thereafter neither directly or indirectly be used or disclosed, revealed, made available or disseminated to any person who is not an authorized employee of Pacific Union. Proprietary information includes but is not limited to (1) products, services, processes, training, business strategies and philosophies, manuals and reference guides; (2) investor and customer information, contract terms, rates and pricing structure; (3) marketing data, information, leads, lead generation and marketing plans; and (4) pricing, commission and rate information.

11. NON-SOLICITATION CLAUSE: Employee acknowledges that Company invests substantial time, money and other resources to recruit, train and retain talented individuals. Employee further acknowledges that Company's efforts in this regard promote the business goodwill of the company by fostering productive, long-term relationships between Company, its employees and clients. In exchange for Company's investments set forth herein and to protect Company's business goodwill, Employee agrees that during his or her employment with Company and for a period of one (1) year following the termination of such employment for any reason, he or she shall not, either directly or indirectly, hire or retain any employee or officer of Company with whom Employee worked directly in the course of his or employment with Company hired on or after the Effective Date of Agreement. Further, Employee will not call on, solicit, induce, hire, or retain any such person, except any employees who were associated with Employee on or prior to the effective date of the transition, to terminate his or her employment with Company and will not assist any other person or entity in such a solicitation. Employee further agrees that he or she will not discuss, by any means whatsoever, with any such employee or officer of Company the termination of such individual's employment with Company during the time period set forth above.

12. DUTY OF LOYALTY TO COMPANY: Employee acknowledges that, as an Employee of Company, Employee has a duty to do no act having a tendency to injure Company's business or financial interests. In exchange for the consideration set forth herein, Employee hereby contractually acknowledges and agrees that Employee will not violate this duty. Included within this provision is a prohibition on Employee from soliciting Company's customers, prospective customers, and employees for any reason other than Company's legitimate business purposes.

Page 2 of 6

COPYRIGHT PACIFIC UNION FINANCIAL, LLC
DRBM.20140312

Filed in Fourth Judicial District Court
1/5/2018 3:01 PM
Hennepin County, MN

13. COMPENSATION: Employee shall be compensated as outlined in the Compensation Plan attached as Exhibit A. This Compensation Plan will be adjusted quarterly or more frequently at Pacific Union's sole discretion.

14. TERMINATION: Employee may terminate this agreement by providing Pacific Union with thirty (30) days prior written notice. Upon receipt of such notice, Pacific Union may elect to terminate the Employee on an earlier date. Unless terminated for cause, Pacific Union, in its sole discretion, may permit Employee to receive commissions for Employee's originated loans in the process of closing or funding as of the date of termination in accordance with Exhibit A. To receive such commissions, Employee must submit a complete list of all loans in process, reporting the status of each, and cooperate with Pacific Union to process such loans to completion. Such loans must be closed and funded within thirty (30) days after Employee's last day of employment with Pacific Union to be eligible for compensation. It shall remain within Pacific Union's sole discretion to permit Employee to receive any or all or part of the foregoing commission.

Further, Employee shall receive no commission for loans on Employee's verified list in the event that: (1) the loans do not conform in any material respect to Pacific Union's standards, or (2) Employee does not satisfy, in any material respect, the terms and conditions of Employee's employment with Pacific Union.

In the event Employee is terminated for cause, Employee will be entitled to receive commission only for those loans that close and fund on or before the date Employee is terminated. Moreover, Pacific Union will be entitled to offset against such commission, if any, all losses incurred by Pacific Union including, but not limited, to the following losses: (1) all losses incurred by Pacific Union as a result of Employee's breach of this agreement; (2) all losses incurred by Pacific Union as a result of any fraudulent activity on the part of the Employee; or (3) any loss incurred as a result of any misrepresentation made by Employee to Pacific Union, borrower or any investor.

Employee expressly acknowledges and agrees that all loans originated and contracts obtained by Employee during Employee's employment with Pacific Union are the sole and exclusive property of Pacific Union, without regard to whether Employee took the applications, Employee knows the borrower or the state of processing of such loans or performance of such contracts. Upon Employee's termination, such loans and contracts shall remain the sole and exclusive property of Pacific Union. Without the express written consent of the Pacific Union, Employee agrees that Employee shall take no action of any type to place such loans originated, and contracts obtained by Employee, with another lender.

Employee, upon termination, shall return all materials of any type provided to Employee by Pacific Union, including without limitation, all confidential information and any equipment.

15. REPRESENTATIONS OF EMPLOYEE: All representations of the Employee made herein, or in advance hereof to induce Pacific Union to enter into this Agreement are true and correct.

Employee further represents that he/she is not a party to or bound by any agreement, contract or understanding with any other party or entity that would in any way restrict or prohibit them from entering into this Agreement or performing all the terms hereof. Employee recognizes that Pacific Union is not in a position to know of any existing contracts and it is relying on the representations of Employee. Employee's failure to advise Pacific Union of the existence of any such agreement, contract or understanding could result in termination.

16. GOVERNING LAW: This Agreement shall be governed by, construed under and enforced in accordance with the laws of the State of Texas. Venue shall lie in the courts of Dallas County, Texas.

17. SUCCESSORS AND ASSIGNS: Employee may not, under any circumstances assign or delegate Employee's rights or obligations under the Agreement, absent Pacific Union's written consent. This Agreement shall be binding upon the parties hereto and their respective successors, assigns, and

Page 3 of 6

COPYRIGHT PACIFIC UNION FINANCIAL, LLC
DRBM.20140312

Filed in Fourth Judicial District Court
1/5/2018 3:01 PM
Hennepin County, MN

personal representatives, including any successor of Pacific Union by merger, consolidation or other reorganization.

18. **ENTIRE AGREEMENT**: The Agreement represents the entire agreement between the parties and may only be amended in a written instrument signed by both parties.

19. **NOTICES**: Any notice required by this Agreement shall be given in writing and personally delivered or sent to the respective parties at their addresses set forth below. Such notice shall be deemed given five (5) days after mailing by mail, unless personally delivered.

20. **MODIFICATIONS**: This Agreement cannot be waived, changed, modified or discharged orally. All changes must be made in writing.

21. **WAIVERS**: A waiver by either party of any of the terms or conditions of the Agreement in any instance shall not be deemed or construed to be a waiver of such term or condition for the future, or of any subsequent breach thereof, or any other term or condition of the Agreement.

22. **SEVERABILITY**: If any provision hereof is held to be invalid, illegal, or unenforceable under present of future laws, such provision shall be fully severable; this Agreement shall be construed and enforced as if such invalid, illegal or unenforceable provision had never comprised a part hereof; and the remaining provisions hereof shall remain in full force and effect and shall not be affected by the invalid, illegal, or unenforceable provision or severance here from.

By signing below, I, the undersigned Employee, agree to the terms stated in the Agreement.

**Pacific Union Financial, LLC:**                    Employee:

Signature: _____    Signature: _____

Printed Name: Dwayne Smith, CAO            Printed Name: Nicholas Brownell

Date: _____    Date: 0c/09/2014

COPYRIGHT PACIFIC UNION FINANCIAL, LLC
DRBM.20140312

Filed in Fourth Judicial District Court
1/5/2018 3:01 PM
Hennepin County, MN

## Addendum to Branch Manager compensation Agreement
## "Exhibit A"

Branch #: 2051 Killebrew Drive, #314, Bloomington, MN 55425

Employee Name: Nick Brownell

Date: June 1, 2014

__X__ Producing Branch Manager

_____ Non-Producing Branch Manager

Base Pay:

Employee shall be entitled to a cumulative Recoverable Base Pay of Twenty Three Thousand Six Hundred Sixty and 00/100 Dollars ($23,660.00) per year, which will be paid to employee on a bi-weekly basis in the amount of Nine Hundred Ten and 00/100 dollars ($910.00), during their employment with Company. This Base Pay will be applied against commission dollars earned.

Commission Income:

Employee shall be paid at a base commission rate as outlined below. This calculation will apply to all loans sourced by the employee and funded in their name for the commission cycle as defined by the Distributed Retail commission schedule.

| | |
|---|---|
| Standard basis point payout: | 150 basis points (.015) bps multiplied by unpaid principal balance |
| Minimum commission per loan: | $500 |
| Maximum commission per loan: | $6,000 |

Manager Override:

Employee shall also be paid at a tiered Manager override at a tiered rate related to specific unit goals as detailed below. All tiers are retroactive. This calculation will apply to all loans funded for the Calendar Period. Tiered compensation will be assessed on a monthly basis and paid on the monthly commission cycle as defined on the Distributed Retail commission schedule. For the purposes of the incentive calculations, the unit measurement will be reset to zero (0) at the beginning of each month.

| Tier | Additional BPS | Min Volume | Max Volume | Calendar Period | Retro (Y/N) |
|---|---|---|---|---|---|
| 1 | 10 | 0 | 1,999,999 | Month | Y |
| 2 | 15 | 2,000,000 | 2,999,999 | Month | Y |
| 3 | 20 | 3,000,000 | 3,999,999 | Month | Y |
| 4 | 25 | 4,000,000 | + | Month | Y |

If total commissions earned (Base and Tiered) does not exceed draw payment, then a deficit will occur. All deficits will be collected from future commissions earned. Company reserves the right to reduce, alter, or revoke the forgivable draw if Employee is not meeting the minimum performance expectations of six (6) funded loans per quarter. If your employment voluntarily terminates within ninety (90) days of any forgivable draw payment, Employee must repay Company all forgivable draw monies that were previously paid to Employee upon termination.

Employee fully understands that Company's commission policy and loan product mix is subject to change from time to time at the sole discretion of Company. In the event that Company chooses to change its commission policy in the future, Employee will be notified of such change prior to the effective date. Loan product mix is

COPYRIGHT PACIFIC UNION FINANCIAL, LLC
DRBM.20140312

Filed in Fourth Judicial District Court
1/5/2018 3:01 PM
Hennepin County, MN

subject to change at any time and without notice. All compensation to Employee is paid as a W-2 wage earner and is subject to required state and federal payroll withholdings.

By signing below, I, the undersigned Employee, agree to the terms stated in the Agreement.

**Pacific Union Financial, LLC:**

Signature: _____

Printed Name: _____

Date: _____

Address: _____

**Employee:**

Signature: _Nik B_____

Printed Name: _Nicholas Browell_____

Date: _06/09/2014_____

Address: _2051 Killebrew Dr. 314____

Pacific Union Financial, LLC is an at-will employer and the information provided herein or in any other publication to employees, does not constitute, nor is it to be interpreted, as a contract of employment. The employer-employee relationship may be terminated at any time by either party. Unless otherwise explicitly stated in this letter (or otherwise required by applicable law), you must be employed by Pacific Union at the time any bonus or guarantee, if earned, are to be paid to be entitled to such bonus or guarantee. Should your employment be terminated for any reason, any bonus or guarantee, if earned, will be prorated up to your last day of work.

COPYRIGHT PACIFIC UNION FINANCIAL, LLC
DRBM.20140312

Filed in Fourth Judicial District Court
1/5/2018 3:01 PM
Hennepin County, MN

EXHIBIT 4

Filed in Fourth Judicial District Court
1/5/2018 3:01 PM
Hennepin County, MN



# Pacific Union Financial

### BRANCH MANAGER AGREEMENT

This agreement ("Agreement") is made the day of <u>March 24, 2014</u>, ("Effective Date") by and between Pacific Union Financial, LLC ("Pacific Union" or "Company") and <u>Dave Dingman</u> ("Employee").

WHEREAS, Pacific Union is engaged in the residential mortgage loan business, including the origination of such loans; and

WHEREAS, Employee is employed as a branch manager of Pacific Union in its branch located at <u>7101 Northland Circle, #215, Brooklyn Park, MN 55428</u> to not only manage his or her branch, but to also originate residential mortgage loans. Employee and Pacific Union desire to enter into this agreement based upon the following terms and conditions:

1. TERM: Employee shall be an employee at will and may be terminated at any time with or without cause.

2. DUTIES: Employee's primary duties shall be to manage his or her branch and originate residential mortgage loans meeting the guidelines of Pacific Union and such other duties as Employee may from time to time be assigned. Branch Manager shall have sole responsibility of the Branch Office staffed by the Branch Manager. This responsibility shall include, but not be limited to, the profitability of that Branch Office.

3. EXCLUSIVE EMPLOYMENT: Employee agrees that Company may prohibit any outside employment that directly competes with or otherwise conflicts with Company's essential business interests, including outside employment prohibited by the Federal Housing Administration (FHA) guidelines, such as outside employment in mortgage lending, real estate, or a related field. Further, Employee will immediately notify Company of any employment in violation of such guidelines and cease employment with Company immediately.

4. BUSINESS RELATIONSHIPS: Employee attests that no contract or agreement exists that would prohibit or inhibit Employee's performance of required job functions with Company. Employee further attests that no discussions with Company occurred prior to Employee's start date with Company that could be considered a violation of any contract or agreement with a previous employer, and that Employee did not, and will not prospectively, participate in any activity, including the recruitment of any other Company employee, that would violate any such contract or agreement. Company shall not involve Employee in any recruiting, or other, activities that may be considered a violation of any Employee obligations to a previous employer.

5. RESTRICTIONS: Employee, during the term of his/her employment shall not engage in any other real estate or mortgage related business without the prior written approval of Pacific Union. Employee shall not alone, or in concert with others, engage in any pursuit, activity, business or relationship that is, or could be, in competition with Pacific Union or is adverse to Pacific Union or branch manager's best interest.

6. COMPLIANCE WITH LAW: Employee represents that he/she is knowledgeable of all laws and regulations applicable to the services to be performed by Employee in the management of his or her branch and in the origination of residential mortgage loans, and agrees to abide by all such laws and regulations. Employee also recognizes the importance of maintaining the confidentiality of personal information gathered and maintained in the course of his/her employment and agrees to comply with all federal and state privacy laws including, but not limited to, Title V of the federal Gramm-Leach Bliley Act and the regulations and guidelines there under and other similar state laws. Moreover, Employee shall take all steps to obtain and maintain all individual licenses, registrations and other approvals as required by either state or federal law for Employee to perform his/her duties on behalf of Pacific Union. Employee must, at all times, give Pacific Union access to his/her licensing records. Removal of access on the NMLS system could result in immediate termination. Employee agrees to not solicit or originate any loans in a state in which he/she is not licensed. Employee further understands that he/she is only permitted to be paid in accordance with the most recent compensation plan on file with Human Resources and understands that accepting payments not documented in the plan is not only a violation of the law, but also Pacific Union's policy.

1

Filed In Fourth Judicial District Court
1/5/2018 3:01 PM
Hennepin County, MN

# Pacific Union Financial

7. **QUALIFICATIONS:** Employee represents that he/she is licensed or otherwise qualified by law and experience to engage in the profession of a branch manager/mortgage loan originator in the state or states in which Employee will be working.

8. **WORK HOURS:** Employee agrees to use his/her best efforts to meet Pacific Union's production goals during the scheduled working hours as may from time to time be designated by Pacific Union. Employee is an exempt employee and will be paid a salary in accordance with the Compensation Plan attached Exhibit A.

9. **QUALITY CONTROL:** Employee shall adhere strictly to the quality control standards of Pacific Union.

10. **CONFIDENTIALITY:** Employee agrees that all proprietary information of Pacific Union that Employee learns of or that may come into the possession of Employee during the term of employment, shall during the term of employment and thereafter neither directly or indirectly be used or disclosed, revealed, made available or disseminated to any person who is not an authorized employee of Pacific Union. Proprietary information includes but is not limited to (1) products, services, processes, training, business strategies and philosophies, manuals and reference guides; (2) investor and customer information, contract terms, rates and pricing structure; (3) marketing data, information, leads, lead generation and marketing plans; and (4) pricing, commission and rate information.

11. **NON-SOLICITATION CLAUSE:** Employee acknowledges that Company invests substantial time, money and other resources to recruit, train and retain talented individuals. Employee further acknowledges that Company's efforts in this regard promote the business goodwill of the company by fostering productive, long-term relationships between Company, its employees and clients. In exchange for Company's investments set forth herein and to protect Company's business goodwill, Employee agrees that during his or her employment with Company and for a period of one (1) year following the termination of such employment for any reason, he or she shall not, either directly or indirectly, hire or retain any employee or officer of Company with whom Employee worked directly in the course of his or employment with Company hired on or after the Effective Date of Agreement. Further, Employee will not call on, solicit, induce, hire, or retain any such person, except any employees who were associated with Employee on or prior to the effective date of the transition, to terminate his or her employment with Company and will not assist any other person or entity in such a solicitation. Employee further agrees that he or she will not discuss, by any means whatsoever, with any such employee or officer of Company the termination of such individual's employment with Company during the time period set forth above.

12. **DUTY OF LOYALTY TO COMPANY:** Employee acknowledges that, as an Employee of Company, Employee has a duty to do no act having a tendency to injure Company's business or financial interests. In exchange for the consideration set forth herein, Employee hereby contractually acknowledges and agrees that Employee will not violate this duty. Included within this provision is a prohibition on Employee from soliciting Company's customers, prospective customers, and employees for any reason other than Company's legitimate business purposes.

13. **COMPENSATION:** Employee shall be compensated as outlined in the Compensation Plan attached as Exhibit A. This Compensation Plan will be adjusted quarterly or more frequently at Pacific Union's sole discretion.

14. **TERMINATION:** Employee may terminate this agreement by providing Pacific Union with thirty (30) days prior written notice. Upon receipt of such notice, Pacific Union may elect to terminate the Employee on an earlier date. Unless terminated for cause, Pacific Union, in its sole discretion, may permit Employee to receive commissions for Employee's originated loans in the process of closing or funding as of the date of termination in accordance with Exhibit A. To receive such commissions, Employee must submit a complete list of all loans in process, reporting the status of each, and cooperate with Pacific Union to process such loans to completion. Such loans must be closed and funded within thirty (30) days after Employee's last day of employment with Pacific Union to be eligible for compensation. It shall remain within Pacific Union's sole discretion to permit Employee to receive any or all or part of the foregoing commission.

2

Filed in Fourth Judicial District Court
1/5/2018 3:01 PM
Hennepin County, MN



Pacific Union Financial

Further, Employee shall receive no commission for loans on Employee's verified list in the event that: (1) the loans do not conform in any material respect to Pacific Union's standards, or (2) Employee does not satisfy, in any material respect, the terms and conditions of Employee's employment with Pacific Union.

In the event Employee is terminated for cause, Employee will be entitled to receive commission only for those loans that close and fund on or before the date Employee is terminated. Moreover, Pacific Union will be entitled to offset against such commission, if any, all losses incurred by Pacific Union including, but not limited, to the following losses: (1) all losses incurred by Pacific Union as a result of Employee's breach of this agreement; (2) all losses incurred by Pacific Union as a result of any fraudulent activity on the part of the Employee; or (3) any loss incurred as a result of any misrepresentation made by Employee to Pacific Union, borrower or any investor.

Employee expressly acknowledges and agrees that all loans originated and contracts obtained by Employee during Employee's employment with Pacific Union are the sole and exclusive property of Pacific Union, without regard to whether Employee took the applications, Employee knows the borrower or the state of processing of such loans or performance of such contracts. Upon Employee's termination, such loans and contracts shall remain the sole and exclusive property of Pacific Union. Without the express written consent of the Pacific Union, Employee agrees that Employee shall take no action of any type to place such loans originated, and contracts obtained by Employee, with another lender.

Employee, upon termination, shall return all materials of any type provided to Employee by Pacific Union, including without limitation, all confidential information and any equipment.

15. REPRESENTATIONS OF EMPLOYEE; All representations of the Employee made herein, or in advance hereof to induce Pacific Union to enter into this Agreement are true and correct.

Employee further represents that he/she is not a party to or bound by any agreement, contract or understanding with any other party or entity that would in any way restrict or prohibit them from entering into this Agreement or performing all the terms hereof. Employee recognizes that Pacific Union is not in a position to know of any existing contracts and it is relying on the representations of Employee. Employee's failure to advise Pacific Union of the existence of any such agreement, contract or understanding could result in termination.

16. GOVERNING LAW: This Agreement shall be governed by, construed under and enforced in accordance with the laws of the State of Texas. Venue shall lie in the courts of Dallas County, Texas.

17. SUCCESSORS AND ASSIGNS: Employee may not, under any circumstances assign or delegate Employee's rights or obligations under the Agreement, absent Pacific Union's written consent. This Agreement shall be binding upon the parties hereto and their respective successors, assigns, and personal representatives, including any successor of Pacific Union by merger, consolidation or other reorganization.

18. ENTIRE AGREEMENT: The Agreement represents the entire agreement between the parties and may only be amended in a written instrument signed by both parties.

19. NOTICES: Any notice required by this Agreement shall be given in writing and personally delivered or sent to the respective parties at their addresses set forth below. Such notice shall be deemed given five (5) days after mailing by mail, unless personally delivered.

20. MODIFICATIONS: This Agreement cannot be waived, changed, modified or discharged orally. All changes must be made in writing.

21. WAIVERS: A waiver by either party of any of the terms or conditions of the Agreement in any instance shall not be deemed or construed to be a waiver of such term or condition for the future, or of any subsequent breach thereof, or any other term or condition of the Agreement.

3

Filed in Fourth Judicial District Court
1/5/2018 3:01 PM
Hennepin County, MN

# Pacific Union Financial

22. DISTRIBUTED RETAIL BRANCH RECRUITMENT: Pacific Union agrees not to engage in active recruitment of mortgage loan originators for any additional distributed retail branch offices in the Territory covered by the Branch Manager's operations. This exclusive right is subject to periodic review and is subject to change without consent of Employee. The continuation of the exclusive territory shall be reviewed on an annual basis, or sooner, at the Company's sole discretion. Territory is defined as Minnesota, Wisconsin, North Dakota, South Dakota and Iowa. Employee has the exclusive right to recruit mortgage loan originators, for the distributed retail branch(es) located in his or her Territory or in the development of additional distributed retail branches within the Territory. Any employee(s) or branch(es) associated with Employee's territory, as of the effective date of the agreement, are excluded from the non-solicitation limitation. Any subsequent branch(es) and/or subsequent employee(s) acquired on or after the Effective Date of Agreement are expressly subject to aforementioned the non-solicitation restrictions. Branch Manager agrees to comply with all company policies regarding recruitment and must work through Human Resources for all purposes in the hiring process.

23. SEVERABILITY: If any provision hereof is held to be invalid, illegal, or unenforceable under present or future laws, such provision shall be fully severable; this Agreement shall be construed and enforced as if such invalid, illegal or unenforceable provision had never comprised a part hereof; and the remaining provisions hereof shall remain in full force and effect and shall not be affected by the invalid, illegal, or unenforceable provision or severance herefrom.

By signing below, I, the undersigned Employee, agree to the terms stated in the Agreement.

**Pacific Union Financial, LLC:**                    **Employee:**

Signature: _____        Signature: _____

Printed Name: Dwayne Smith, CAO           Printed Name: David Dingman

Date: 3/24/14                                            Date: 3-24-2014

4

-64-

Filed in Fourth Judicial District Court
1/5/2018 3:01 PM
Hennepin County, MN

# EXHIBIT 5

Filed in Fourth Judicial District Court
1/5/2018 3:01 PM
Hennepin County, MN



# Pacific Financial

## BRANCH MANAGER AGREEMENT

This agreement ("Agreement") is made the day of <u>March 24, 2014</u>, ("Effective Date") by and between Pacific Union Financial, LLC ("Pacific Union" or "Company") and <u>Scott Smith</u> ("Employee").

WHEREAS, Pacific Union is engaged in the residential mortgage loan business, including the origination of such loans; and

WHEREAS, Employee is employed as a branch manager of Pacific Union in its branch located at <u>7101 Northland Circle, #215, Brooklyn Park, MN 55428</u> to not only manage his or her branch, but to also originate residential mortgage loans. Employee and Pacific Union desire to enter into this agreement based upon the following terms and conditions:

1. TERM: Employee shall be an employee at will and may be terminated at any time with or without cause.

2. DUTIES: Employee's primary duties shall be to manage his or her branch and originate residential mortgage loans meeting the guidelines of Pacific Union and such other duties as Employee may from time to time be assigned. Branch Manager shall have sole responsibility of the Branch Office staffed by the Branch Manager. This responsibility shall include, but not be limited to, the profitability of that Branch Office.

3. EXCLUSIVE EMPLOYMENT: Employee agrees that Company may prohibit any outside employment that directly competes with or otherwise conflicts with Company's essential business interests, including outside employment prohibited by the Federal Housing Administration (FHA) guidelines, such as outside employment in mortgage lending, real estate, or a related field. Further, Employee will immediately notify Company of any employment in violation of such guidelines and cease employment with Company immediately.

4. BUSINESS RELATIONSHIPS: Employee attests that no contract or agreement exists that would prohibit or inhibit Employee's performance of required job functions with Company. Employee further attests that no discussions with Company occurred prior to Employee's start date with Company that could be considered a violation of any contract or agreement with a previous employer, and that Employee did not, and will not prospectively, participate in any activity, including the recruitment of any other Company employee, that would violate any such contract or agreement. Company shall not involve Employee in any recruiting, or other, activities that may be considered a violation of any Employee obligations to a previous employer.

5. RESTRICTIONS: Employee, during the term of his/her employment shall not engage in any other real estate or mortgage related business without the prior written approval of Pacific Union. Employee shall not alone, or in concert with others, engage in any pursuit, activity, business or relationship that is, or could be, in competition with Pacific Union or is adverse to Pacific Union or branch manager's best interest.

6. COMPLIANCE WITH LAW: Employee represents that he/she is knowledgeable of all laws and regulations applicable to the services to be performed by Employee in the management of his or her branch and in the origination of residential mortgage loans, and agrees to abide by all such laws and regulations. Employee also recognizes the importance of maintaining the confidentiality of personal information gathered and maintained in the course of his/her employment and agrees to comply with all federal and state privacy laws including, but not limited to, Title V of the federal Gramm-Leach Bliley Act and the regulations and guidelines there under and other similar state laws. Moreover, Employee shall take all steps to obtain and maintain all individual licenses, registrations and other approvals as required by either state or federal law for Employee to perform his/her duties on behalf of Pacific Union. Employee must, at all times, give Pacific Union access to his/her licensing records. Removal of access on the NMLS system could result in immediate termination. Employee agrees to not solicit or originate any loans in a state in which he/she is not licensed. Employee further understands that he/she is only permitted to be paid in accordance with the most recent compensation plan on file with Human Resources and understands that accepting payments not documented in the plan is not only a violation of the law, but also Pacific Union's policy.

1

Filed in Fourth Judicial District Court
1/5/2018 3:01 PM
Hennepin County, MN


Pacific Union Financial

7. QUALIFICATIONS: Employee represents that he/she is licensed or otherwise qualified by law and experience to engage in the profession of a branch manager/mortgage loan originator in the state or states in which Employee will be working.

8. WORK HOURS: Employee agrees to use his/her best efforts to meet Pacific Union's production goals during the scheduled working hours as may from time to time be designated by Pacific Union. Employee is an exempt employee and will be paid a salary in accordance with the Compensation Plan attached Exhibit A.

9. QUALITY CONTROL: Employee shall adhere strictly to the quality control standards of Pacific Union.

10. CONFIDENTIALITY: Employee agrees that all proprietary information of Pacific Union that Employee learns of or that may come into the possession of Employee during the term of employment, shall during the term of employment and thereafter neither directly or indirectly be used or disclosed, revealed, made available or disseminated to any person who is not an authorized employee of Pacific Union. Proprietary information includes but is not limited to (1) products, services, processes, training, business strategies and philosophies, manuals and reference guides; (2) investor and customer information, contract terms, rates and pricing structure; (3) marketing data, information, leads, lead generation and marketing plans; and (4) pricing, commission and rate information.

11. NON-SOLICITATION CLAUSE: Employee acknowledges that Company invests substantial time, money and other resources to recruit, train and retain talented individuals. Employee further acknowledges that Company's efforts in this regard promote the business goodwill of the company by fostering productive, long-term relationships between Company, its employees and clients. In exchange for Company's investments set forth herein and to protect Company's business goodwill, Employee agrees that during his or her employment with Company and for a period of one (1) year following the termination of such employment for any reason, he or she shall not, either directly or indirectly, hire or retain any employee or officer of Company with whom Employee worked directly in the course of his or employment with Company hired on or after the Effective Date of Agreement. Further, Employee will not call on, solicit, induce, hire, or retain any such person, except any employees who were associated with Employee on or prior to the effective date of the transition, to terminate his or her employment with Company and will not assist any other person or entity in such a solicitation. Employee further agrees that he or she will not discuss, by any means whatsoever, with any such employee or officer of Company the termination of such individual's employment with Company during the time period set forth above.

12. DUTY OF LOYALTY TO COMPANY: Employee acknowledges that, as an Employee of Company, Employee has a duty to do no act having a tendency to injure Company's business or financial interests. In exchange for the consideration set forth herein, Employee hereby contractually acknowledges and agrees that Employee will not violate this duty. Included within this provision is a prohibition on Employee from soliciting Company's customers, prospective customers, and employees for any reason other than Company's legitimate business purposes.

13. COMPENSATION: Employee shall be compensated as outlined in the Compensation Plan attached as Exhibit A. This Compensation Plan will be adjusted quarterly or more frequently at Pacific Union's sole discretion.

14. TERMINATION: Employee may terminate this agreement by providing Pacific Union with thirty (30) days prior written notice. Upon receipt of such notice, Pacific Union may elect to terminate the Employee on an earlier date. Unless terminated for cause, Pacific Union, in its sole discretion, may permit Employee to receive commissions for Employee's originated loans in the process of closing or funding as of the date of termination in accordance with Exhibit A. To receive such commissions, Employee must submit a complete list of all loans in process, reporting the status of each, and cooperate with Pacific Union to process such loans to completion. Such loans must be closed and funded within thirty (30) days after Employee's last day of employment with Pacific Union to be eligible for compensation. It shall remain within Pacific Union's sole discretion to permit Employee to receive any or all or part of the foregoing commission.

2

Filed in Fourth Judicial District Court
1/5/2018 3:01 PM
Hennepin County, MN



Further, Employee shall receive no commission for loans on Employee's verified list in the event that: (1) the loans do not conform in any material respect to Pacific Union's standards, or (2) Employee does not satisfy, in any material respect, the terms and conditions of Employee's employment with Pacific Union.

In the event Employee is terminated for cause, Employee will be entitled to receive commission only for those loans that close and fund on or before the date Employee is terminated. Moreover, Pacific Union will be entitled to offset against such commission, if any, all losses incurred by Pacific Union including, but not limited, to the following losses: (1) all losses incurred by Pacific Union as a result of Employee's breach of this agreement; (2) all losses incurred by Pacific Union as a result of any fraudulent activity on the part of the Employee; or (3) any loss incurred as a result of any misrepresentation made by Employee to Pacific Union, borrower or any investor.

Employee expressly acknowledges and agrees that all loans originated and contracts obtained by Employee during Employee's employment with Pacific Union are the sole and exclusive property of Pacific Union, without regard to whether Employee took the applications, Employee knows the borrower or the state of processing of such loans or performance of such contracts. Upon Employee's termination, such loans and contracts shall remain the sole and exclusive property of Pacific Union. Without the express written consent of the Pacific Union, Employee agrees that Employee shall take no action of any type to place such loans originated, and contracts obtained by Employee, with another lender.

Employee, upon termination, shall return all materials of any type provided to Employee by Pacific Union, including without limitation, all confidential information and any equipment.

15. REPRESENTATIONS OF EMPLOYEE; All representations of the Employee made herein, or in advance hereof to induce Pacific Union to enter into this Agreement are true and correct.

Employee further represents that he/she is not a party to or bound by any agreement. contract or understanding with any other party or entity that would in any way restrict or prohibit them from entering into this Agreement or performing all the terms hereof. Employee recognizes that Pacific Union is not in a position to know of any existing contracts and it is relying on the representations of Employee. Employee's failure to advise Pacific Union of the existence of any such agreement, contract or understanding could result in termination.

16. GOVERNING LAW: This Agreement shall be governed by, construed under and enforced in accordance with the laws of the State of Texas. Venue shall lie in the courts of Dallas County, Texas.

17. SUCCESSORS AND ASSIGNS: Employee may not, under any circumstances assign or delegate Employee's rights or obligations under the Agreement, absent Pacific Union's written consent. This Agreement shall be binding upon the parties hereto and their respective successors, assigns, and personal representatives, including any successor of Pacific Union by merger, consolidation or other reorganization.

18. ENTIRE AGREEMENT: The Agreement represents the entire agreement between the parties and may only be amended in a written instrument signed by both parties.

19. NOTICES: Any notice required by this Agreement shall be given in writing and personally delivered or sent to the respective parties at their addresses set forth below. Such notice shall be deemed given five (5) days after mailing by mail, unless personally delivered.

20. MODIFICATIONS: This Agreement cannot be waived, changed, modified or discharged orally. All changes must be made in writing.

21. WAIVERS: A waiver by either party of any of the terms or conditions of the Agreement in any instance shall not be deemed or construed to be a waiver of such term or condition for the future, or of any subsequent breach thereof, or any other term or condition of the Agreement.

3

Filed in Fourth Judicial District Court
1/5/2018 3:01 PM
Hennepin County, MN



Pacific Union Financial

22. DISTRIBUTED RETAIL BRANCH RECRUITMENT: Pacific Union agrees not to engage in active recruitment of mortgage loan originators for any additional distributed retail branch offices in the Territory covered by the Branch Manager's operations. This exclusive right is subject to periodic review and is subject to change without consent of Employee. The continuation of the exclusive territory shall be reviewed on an annual basis, or sooner, at the Company's sole discretion. Territory is defined as Minnesota, Wisconsin, North Dakota, South Dakota and Iowa. Employee has the exclusive right to recruit mortgage loan originators, for the distributed retail branch(es) located in his or her Territory or in the development of additional distributed retail branches within the Territory. Any employee(s) or branch(es) associated with Employee's territory, as of the effective date of the agreement, are excluded from the non-solicitation limitation. Any subsequent branch(es) and/or subsequent employee(s) acquired on or after the Effective Date of Agreement are expressly subject to aforementioned the non-solicitation restrictions. Branch Manager agrees to comply with all company policies regarding recruitment and must work through Human Resources for all purposes in the hiring process.

23. SEVERABILITY: If any provision hereof is held to be invalid, illegal, or unenforceable under present of future laws, such provision shall be fully severable; this Agreement shall be construed and enforced as if such invalid, illegal or unenforceable provision had never comprised a part hereof; and the remaining provisions hereof shall remain in full force and effect and shall not be affected by the invalid, illegal, or unenforceable provision or severance herefrom.

By signing below, I, the undersigned Employee, agree to the terms stated in the Agreement.

Pacific Union Financial, LLC:                      Employee:

Signature: _____          Signature: _____

Printed Name: Dwayne Smith, CAO              Printed Name: SCOTT SMITH

Date: 3/24/14                                          Date: 3-24-14

4

-69-

Filed in Fourth Judicial District Court
1/5/2018 3:01 PM
Hennepin County, MN



# Pacific Union Financial

## Addendum to Branch Manager Compensation Agreement "Exhibit A"

Branch #: <u>7101 Northland Circle, #215, Brooklyn Park, MN 55428</u>

Employee Name: <u>Scott Smith</u>

Date: <u>March 24, 2014</u>

___ Producing Branch Manager

_X_ Non-Producing Branch Manager

**Base Salary:**

The branch manager will receive a base monthly salary in the amount of $ 2,000 per month.

**Accumulating Recoverable Advance:**

The branch manager will receive an accumulating recoverable advance against the regional P&L in the amount of $30,000 per month, net of the base salary above.

**Net Income Agreement:**

The branch manager will receive a % split each month of the cumulative regional P&L in accordance with the following schedule:

- 45% each month for six (6) months from the effective date of this agreement

- 37.5% each month thereafter

Signature: _____

Printed Name: <u>Dwayne Smith, CAO</u>

Date: <u>3/24/14</u>

Signature: _____

Printed Name: <u>SCOTT SMITH</u>

Date: <u>3-24-14</u>

Pacific Union Financial, LLC is an at-will employer and the information provided herein or in any other publication to employees, does not constitute, nor is it to be interpreted, as a contract of employment. The employer-employee relationship may be terminated at any time by either party. Unless otherwise explicitly stated in this letter (or otherwise required by applicable law), you must be employed by Pacific Union at the time any bonus or guarantee, if earned, are to be paid to be entitled to such bonus or guarantee. Should your employment be terminated for any reason, any bonus or guarantee, if earned, will be prorated up to your last day of work.

5

27-CV-18-329

Filed in Fourth Judicial District Court
1/5/2018 3:01 PM
Hennepin County, MN



## PacificUnionFinancial LLC
### YOUR INTERESTS ARE COVERED

### Addendum to Branch Manager Compensation Agreement "Exhibit A"

Branch #: <u>7101 Northland Circle, #215, Brooklyn Park, MN 55428</u>

Employee Name: <u>Scott Smith</u>

Date: <u>March 24, 2014</u>

___ Producing Branch Manager

_X_ Non-Producing Branch Manager

**Base Salary:**

The branch manager will receive a base monthly salary in the amount of $ 2,000 per month.

**Accumulating Recoverable Advance:**

The branch manager will receive an accumulating recoverable advance against the regional P&L in the amount of $30,000 per month, net of the base salary above.

**Net Income Agreement:**

The branch manager will receive a % split each month of the cumulative regional P&L in accordance with the following schedule:

- 45% each month for six (6) months from the effective date of this agreement

- 37.5% each month thereafter

Signature: _____

Printed Name: <u>Dwayne Smith, CAO</u>

Date: _____

Signature: _____

Printed Name: <u>Scott Smith</u>

Date: <u>3-24-14</u>

Pacific Union Financial, LLC is an at-will employer and the information provided herein or in any other publication to employees, does not constitute, nor is it to be interpreted, as a contract of employment. The employer-employee relationship may be terminated at any time by either party. Unless otherwise explicitly stated in this letter (or otherwise required by applicable law), you must be employed by Pacific Union at the time any bonus or guarantee, if earned, are to be paid to be entitled to such bonus or guarantee. Should your employment be terminated for any reason, any bonus or guarantee, if earned, will be prorated up to your last day of work.

5



**PacificUnionFinancial** LLC

PACIFIC UNION FINANCIAL, LLC
BRANCH HOLDBACK AGREEMENT

Whereas Scott Smith, ("Branch Manager") hereby acknowledges that Pacific Union Financial, LLC ("Employer") shall retain certain components of Branch Manager's branch ("Branch") revenues for holdback and setoff purposes with respect to profitability and termination of the branch relationship.

## TERMS AND CONDITIONS

**Holdback.** Employer shall hold back from the Branch's revenues an amount equal to the sum of (i) one month fixed non-personnel expenses, (ii) one month total employee benefits and costs, and (iii) one-half month of fixed salary expense (not, including commissions), all calculated in accordance with Employer's then current policies (collectively, "Holdback"). The Holdback shall be established by Employer retaining $200 per originated loan until the amount of the Holdback meets the requirements set forth above.

**Treatment of Holdback.** At the end of each calendar quarter, Employer shall review the Holdback amount for overages or underages. In the event an underage is discovered, Employer shall retain $200 per originated loan file until the amount meets the Holdback criteria. In the event an overage is discovered, Employer shall disburse such overage to Branch so that the Holdback amount meets the Holdback criteria. The Holdback shall be retained for the benefit of the Branch, and released upon termination of the relationship between Branch and Employer after all outstanding Branch obligations to Employer have been satisfied.

**Governing Law.** This Holdback Agreement is being made in and intended to be construed according to the laws of the State of TEXAS. It shall inure to and be binding upon the parties hereto and their respective successors, heirs and assigns.

**Amendment.** The terms of this Holdback Agreement may be altered, amended, modified or revoked only by an instrument in writing signed by the Branch Manager and the Employer.

**Written Agreement.** This Holdback Agreement represents the final agreement between the parties, and may not be contradicted by evidence of prior, contemporaneous or subsequent oral agreements of the parties. There are no unwritten oral agreements between the parties.

EXECUTED as of the dates set forth below.

Date: 3-24-14

Signature: _____

Printed Name: SCOTT SMITH

Title: BRANCH MANAGER

Date: _____

Signature: _____

Printed Name: Dwayne Smith, SEVP, CAO

Title: _____

-1-

Filed in Fourth Judicial District Court
1/5/2018 3:01 PM
Hennepin County, MN



PACIFIC UNION FINANCIAL, LLC
BRANCH HOLDBACK AGREEMENT

Whereas **Scott Smith**, ("Branch Manager") hereby acknowledges that Pacific Union Financial, LLC ("Employer") shall retain certain components of Branch Manager's branch ("Branch") revenues for holdback and setoff purposes with respect to profitability and termination of the branch relationship.

TERMS AND CONDITIONS

**Holdback.** Employer shall hold back from the Branch's revenues an amount equal to the sum of (i) one month fixed non-personnel expenses, (ii) one month total employee benefits and costs, and (iii) one-half month of fixed salary expense (not including commissions), all calculated in accordance with Employer's then current policies (collectively, "Holdback"). The Holdback shall be established by Employer retaining $200 per originated loan until the amount of the Holdback meets the requirements set forth above.

**Treatment of Holdback.** At the end of each calendar quarter, Employer shall review the Holdback amount for overages or underages. In the event an underage is discovered, Employer shall retain $200 per originated loan file until the amount meets the Holdback criteria. In the event an overage is discovered, Employer shall disburse such overage to Branch so that the Holdback amount meets the Holdback criteria. The Holdback shall be retained for the benefit of the Branch, and released upon termination of the relationship between Branch and Employer after all outstanding Branch obligations to Employer have been satisfied.

**Governing Law.** This Holdback Agreement is being made in and is intended to be construed according to the laws of the State of TEXAS. It shall inure to and be binding upon the parties hereto and their respective successors, heirs and assigns.

**Amendment.** The terms of this Holdback Agreement may be altered, amended, modified or revoked only by an instrument in writing signed by the Branch Manager and the Employer.

**Written Agreement.** This Holdback Agreement represents the final agreement between the parties, and may not be contradicted by evidence of prior, contemporaneous or subsequent oral agreements of the parties. There are no unwritten oral agreements between the parties.

EXECUTED as of the dates set forth below.

Date: 3-24-14

Signature: _____

Printed Name: SCOTT SMITH

Title: BRANCH MANAGER

Date: 3/24/14

Signature: _____

Printed Name: Dwayne Smith, SEVP, CAO

Title: _____

-- 1 --

-73-